BOBBIE J. THORNTON, administratrix, *vs.* COMMONWEALTH.

No. 89-P-69.

Suffolk. December 15, 1989. - April 17, 1990.

Present: PERRETTA, KASS, & FINE, JJ.

*Massachusetts Tort Claims Act. Department of Youth Services. Negligence,* Independent contractor. *Commonwealth,* Liability for tort.

The Commonwealth's duty to care for a juvenile committed to the care of the Division of Youth Services is delegable, and there was no error at the trial of a claim under the Massachusetts Tort Claims Act (G. L. c. 258) in the judge's declining to instruct that the duty was nondelegable in the circumstances of the case. [513-514]

Where the Commonwealth had a delegable duty to care for a juvenile committed to the care of the Division of Youth Services (DYS), the judge at the trial of a negligence claim under G. L. c. 258 for the death of a certain juvenile correctly instructed the jury that they could find the Commonwealth liable only if they found that employees of the independent contractor (a foster care provider) were subject to the direction and control of DYS. [514]

CIVIL ACTION commenced in the Superior Court Department on May 26, 1983.

The case was heard by *John C. Cratsley,* J.

*Neil Sugarman* for the plaintiff.

*Michelle Kaczynski,* Assistant Attorney General, for the Commonwealth.

KASS, J. While committed to the Department of Youth Services (DYS), Mark David Thornton (Mark) drowned in a canoe accident. The tragedy occurred during a camping trip run by. Tri-County Youth Programs, Inc. (Tri-County), an independent contractor to DYS which carried on residential programs for delinquent youths. Assuming Tri-County was solely negligent, the question presented is whether DYS had a nondelegable duty of care to Mark and whether the Commonwealth, therefore, is liable for his suffering and death.

The plaintiff, Mark's mother, brought her action under the Massachusetts Tort Claims Act, G. L. c. 258, after due presentment pursuant to § 4 of c. 258. Trial was before a jury which returned a special verdict (Mass.R.Civ.P. 49[a], 365 Mass. 812 [1974]) in favor of the Commonwealth.[1] In her appeal, the plaintiff claims that the judge erred in declining to instruct the jury that DYS had a nondelegable duty of care to Mark to keep him safe. By way of an argument derived from that primary one, the plaintiff contends that the judge mistakenly instructed the jury that they could find DYS liable only if the employees of Tri-County were subject to the direction and control of DYS.

We sketch some background facts. At age sixteen, Mark was committed to DYS by order of a judge of the Roxbury District Court. Approximately eight months later, in January, 1980, DYS, acting under the authority of G. L. c. 120, § 10(*a*), placed Mark with Tri-County, which operated in Northampton. In addition to foster care, Tri-County provided educational tutoring and counseling. Although DYS monitored Tri-County, as it did other suppliers of custodial services, the plaintiff does not contest (indeed, the parties so stipulated) that Tri-County was an independent contractor. Moreover, the jury's special verdict was that Tri-County, in its care of Mark, had not been subject to the direction and control of the Commonwealth.

Field trips were part of the Tri-County program and, in June, 1980, Steven Maynard, an employee of Tri-County, embarked with three DYS youths on a five day hike and canoe trip to Lake George, New York. On June 4, 1980, a few days into the trip, Maynard and his three charges arrived at a point on Lake George called Bolton Landing from whence they set out in two rented canoes. Mark and another youth, Tom Irving, were in one of the canoes. They engaged in horseplay, for which Maynard admonished them. In the early afternoon, the group arrived at Fox Island to set up

---

[1]Tri-County was made a codefendant by an amended complaint. The plaintiff's motion to dismiss the action against Tri-County was allowed on the second day of trial, over the objection of the Commonwealth.

camp. They had begun to settle into the camp site when Mark and Irving asked Maynard's permission to take the canoes out on the lake. Maynard was sufficiently moved by Mark's expressions of contrition about his earlier "fooling around" in a canoe that he decided to "give him a break." The conditions of permission were that the young men would remain within the bay and that Mark, who was a poor swimmer, would wear his life jacket.

Maynard returned to making camp. Mark set out, took along his life jacket but did not put it on. He tipped his canoe while racing against Irving, panicked (thus failing to grab his canoe or the flotation cushions and paddle that Irving tossed to him), and went under. The body was found by divers that evening.

As we had occasion, recently, to observe, G. L. c. 258, § 2, imposes liability on a public employer, such as the Commonwealth,[2] for the negligence of any *public employee* (a defined term under G. L. c. 258, § 1) acting within the scope of that employee's office or employment. See *Rowe* v. *Arlington, ante* 389, 390 (1990). The *Rowe* case provides further guidance. In the instant case the parties stipulated that Tri-County was an independent contractor. We held in *Rowe* that, within the meaning of the Tort Claims Act, an independent contractor is not a public employee. *Id.* at 391. If Tri-County was not a public employee within the meaning of c. 258, its negligence, or that of its employee, Maynard, cannot be chargeable to DYS, i.e., the Commonwealth.

To this analysis, as we understand her argument, the plaintiff responds that the Commonwealth is, nevertheless, liable because it could not delegate its duty to care for Mark. That is so, the plaintiff contends, because Mark's commitment to DYS imposed on the DYS a heightened duty of care, cf. *Brown* v. *Knight*, 362 Mass. 350, 352 (1972), such that DYS cannot delegate it to someone else. Cf. also Restatement (Second) of Torts § 314A (1965). There are two flaws in the argument. The first is that G. L. c. 120,

---

[2] For the definition of the term "public employer," see G. L. c. 258, § 1.

§ 10(*a*), as appearing in St. 1969, c. 838, § 39, expressly authorizes DYS to "make use of," i.e., delegate to, "facilities, institutions, and agencies, whether public or private." Although § 10(*e*) provides that placement of a youth with an institution or agency does not terminate the control of DYS over the youth, it has nothing to say about a retention of duty of care to a youth who, conformably with the statute, is placed with a private agency. Section 10(*b*), as appearing in St. 1969, c. 838, § 39, looks to the contrary. It provides that nothing in the statutory scheme establishing DYS "shall be construed as giving [DYS] control over existing facilities, institutions or agencies" except certain State institutions described in G. L. c. 120, § 2.

More fundamentally, the Commonwealth is immune to actions of negligence except as c. 258 has abrogated that immunity. See *Gallant* v. *Worcester*, 383 Mass. 707, 711-714 (1981). Recognizing this, the plaintiff brought her action under c. 258. As we have seen, under that statute the Commonwealth is not chargeable with the negligence of independent contractors which it employs, and it adds nothing to assert that the duty of care *ought* not to be delegable. The judge, therefore, did not err when he declined to instruct the jury that the Commonwealth's duty was nondelegable.

A presupposition that DYS owes a nondelegable duty of care to its charges underlies the plaintiff's secondary objection to the judge's instructions to the jury: that the jury could find the Commonwealth liable only if they found that the employees of Tri-County were subject to the direction and control of DYS. In view of our opinion that the DYS did not, in the circumstances, have a nondelegable duty of care, the judge made an altogether correct statement of the law. If anything, the instruction was favorable to the plaintiff because she had already stipulated that Tri-County was an independent contractor.

As a possibly negligent act of DYS, its choice of Tri-County as a placement for Mark could theoretically have been scrutinized. The plaintiff did not, however, allege negligence in the choice of Tri-County as an independent contrac-

tor nor, as the trial judge remarked, was evidence received that initially placing Mark with Tri-County and, thereafter, allowing the placement to continue, were negligent acts of DYS. In default of presentation of such claims, they cannot be maintained. See *Wightman* v. *Methuen*, 26 Mass. App. Ct. 279, 281 (1988).

*Judgment affirmed.*