RICHARD BENCIC, JR., & others[1] *vs.* `CITY OF MALDEN.`

No. 90-P-712.

Middlesex. October 22, 1991. - March 2, 1992.

Present: SMITH, JACOBS, & GILLERMAN, JJ.

*Education*, Special educational needs. *Governmental Immunity. Massachusetts Tort Claims Act. Municipal Corporations*, Liability for tort, Duty to prevent harm.

A municipality's evaluation and placement of a child in a special needs program pursuant to G. L. c. 71B were acts exempt from tort liability under § 10 (*b*) of G. L. c. 258, the Massachusetts Tort Claims Act. [187-188]

A claim that a municipality negligently supervised the behavior of school children fell within the discretionary function exception to the Massachusetts Tort Claims Act, G. L. c. 258, and summary judgment was properly entered for the municipality [188-189]; further, nothing in the record raised the issue of a special duty owed to a particular child because of his placement in a special needs program [189].

CIVIL ACTION commenced in the Superior Court Department on January 16, 1985.

The case was heard by *James F. McHugh,* J., on a motion for summary judgment.

*Peter H. Gilmore* for the plaintiffs.

*Jordan L. Shapiro*, City Solicitor, for the defendant.

JACOBS, J. The minor plaintiff (Richard), a special needs student within the meaning of G. L. c. 71B,[2] was injured

---

[1]Richard Bencic, Sr., individually and as next friend, and Carolyn Bencic.

[2]The statute creates a comprehensive program of evaluation and placement of school age children with special needs. Local school officials are responsible for providing appropriate, publicly supported education for such children pursuant to an individualized education program including, to the extent possible, placing them in the least restrictive regular public school program which meets the child's special needs. See G. L. c. 71B, §§ 1, 3. The statutory and regulatory schemes are more fully described in

while fleeing from an altercation with another student. This incident occurred in the presence of Richard's teacher in the cafeteria of a junior high school operated by the defendant. Richard was thirteen years old at the time of his injury and had attended the Malden public schools since the first grade pursuant to a yearly individualized education plan (IEP). As of the time of the incident, the teacher and school officials had long been aware that Richard was sometimes impulsive, erratic, and combative.

The plaintiffs' complaint, filed pursuant to the Massachusetts Tort Claims Act, G. L. c. 258, alleged (1) negligent educational programming for Richard and (2) negligent supervision of students generally and of Richard specifically. A judge of the Superior Court allowed the defendant's motion for summary judgment, ruling that "[t]he decision as to [Richard's] placement . . . is the paradigm of discretion embraced by G. L. c. 258, § 10(b)."[3] We affirm.

"The adoption of a plan to integrate handicapped pupils fully into the public schools falls precisely into the area of retained immunity." *Whitney* v. *Worcester*, 373 Mass. 208, 224 (1977). While *Whitney* was decided before the 1978 enactment of G. L. c. 258, the immunity recognized by it is not altered by that statute. The statutory and regulatory scheme of G. L. c. 71B requiring that the special education child "must be placed in the least restrictive program which meets the child's special education needs," *Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 668 (1981), relies upon the expertise of local educators to establish academic standards and provide special educational services. *Stock* v. *Massachusetts Hosp. Sch.*, 392 Mass. 205, 213 (1984). The application of such expertise in evaluating each

---

*Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 668 (1981), and *Isgur* v. *School Comm. of Newton*, 9 Mass. App. Ct. 290, 295-297 (1980).

[3]General Laws c. 258, § 10(b), as inserted by St. 1978, c. 512, § 15, exempts from liability "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

child's needs and developing individualized educational programming is indistinguishable in nature from the "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning . . . ." *Whitney* v. *Worcester, supra* at 218. See also *Patrazza* v. *Commonwealth,* 398 Mass. 464, 467-469 (1986). School officials, making individualized placement decisions, of necessity act without strictly "fixed or readily ascertainable standards." See *Cady* v. *Plymouth-Carver Regional Sch. Dist.,* 17 Mass. App. Ct. 211, 215 (1983). We conclude that the adoption of an IEP and the placement of a child pursuant to that plan are therefore acts exempt from tort liability under G. L. c. 258, § 10(*b*).

The claim of negligent supervision is controlled by our decision in *Wightman* v. *Methuen,* 26 Mass. App. Ct. 279 (1988), in which we stated, "Management of student imbroglios, student discipline, and school decorum fall readily within the discretionary function exception to the Tort Claims Act," *id.* at 280, quoting from *Cady, supra* at 217. The plaintiffs argue, nonetheless, that the defendant is liable because its acts in implementing the IEP were not discretionary functions. They rely on the statement in *Whitney* v. *Worcester, supra* at 218, that, "when the particular conduct claimed to be tortious involves . . . the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities . . . ." However, nothing in the record indicates that the defendant was charged with or had assumed any specific duties respecting Richard's deportment or that any individualized policies or plans for supervising Richard's behavior had been established.[4] Consequently,

---

[4]Title 603 Code Mass. Regs. § 28.322.4(f) (1986), provides that the administrator of special education shall make a statement as to the "support services which shall be provided directly to . . . persons providing special education to the child, and the method and types of personnel to be used to provide such support services" as part of the IEP for each child. There were no references to supervision of Richard in his IEP for the year in which the incident occurred. In the student profile section of the IEP, Richard was described as needing "a firm, consistent setting with clear

the defendant's management of Richard's behavior falls within the wide discretion granted to school officials in maintaining discipline and decorum. See *Wightman* v. *Methuen*, *supra* at 280. The plaintiffs' vague argument that the addressing of Richard's known disruptive propensities involved the carrying out of "previously established policies and plans" ignores this court's observation that the standards for dealing with disruptive student behavior are not readily ascertainable and "must be as variable as the personalities of the students and the settings in which disruption occurs." *Cady*, *supra* at 216. Moreover, *Whitney* v. *Worcester* can be read to indicate that decisions to afford or forgo increased supervision for special needs students are under the discretionary function umbrella and are not subject to review by the courts in an action for damages. *Whitney* v. *Worcester*, *supra* at 222, 224. See *A.L.* v. *Commonwealth*, 402 Mass. 234, 245 (1988)("we continue to look to the principles enunciated in *Whitney* to guide our determinations of the intended scope of G. L. c. 258, § 10[*b*]").

The plaintiffs also argue, principally by analogy to *Irwin* v. *Ware*, 392 Mass. 745 (1984), and *A.L.* v. *Commonwealth*, 402 Mass. 234 (1988), that we should find the defendant owed Richard a special duty because of his status as a special needs child. They claim that this special duty is such as to remove the defendant's acts from the discretionary function exception. Although argued for the first time on appeal, we consider this issue, see *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977), but only to note that the discretionary function exemption, when applicable, is a complete bar to liability. The cited decisions engage the issue of special duty only in the context of the activity in question being outside of the exemption.

*Judgment affirmed.*

---

limits." "Counselling" was stated as a general, student-centered goal, and the "counselling process" was listed as part of the "teaching approach and methodology" and "monitoring and evaluation techniques."