Garsh, J.
Plaintiff, Hollie Stubbs (“Stubbs”), commenced this action against The Greater Fall River Regional Vocational School District (the “School District”) for damages arising from the plaintiffs having been struck and injured by another student’s automobile in a student parking lot. The complaint alleges that the School District was negligent “in failing to provide supervision, adequate security and/or safeguards and [that it] negligently failed to prevent students from congregating in said parking area and negligently failed to promulgate sufficient rules and/or regulations to control students’ activities in said parking area.” The School District moves for summary judgment on the grounds that it is immune from liability for these claims under G.L.c. 258, § 10(b). For the reasons set forth below, the School District’s motion for summary judgment is allowed.
BACKGROUND
For purposes of this motion, the School District assumes that all the facts in the plaintiffs answers to interrogatories are true. Those answers were submitted by the defendant in support of its motion for summary judgment. The plaintiff agrees that the defendant’s motion is not based upon any disputed material fact. Accordingly, for purposes of this motion, the following facts are undisputed:
At approximately 7:30 a.m. on January 22, 1993, as the plaintiff, a student at Diman Regional Vocational Technical High School (“Diman”), was walking through the student parking lot, she was struck and injured by a motor vehicle driven by another student. Diman is a secondary high school operated by the School District. The School District is a “public employer” subject to the provisions of the Massachusetts Torts Claims Act.
Before the accident, Stubbs had been dropped off near the rear entrance of the school where she met some friends; they proceeded to walk over to the parking lot where there were groups of people spread out throughout the lot. After speaking with a student for approximately ten to fifteen minutes, Stubbs was walking back towards the school with a friend when the accident occurred.
Diman was aware that students routinely congregated in the student parking lot and that students would routinely spin their tires leaving skid marks on the pavement and race through the short parking lot when the one securily guard who monitored the entire school was not around. The one security guard patrolled all the property of the Diman by riding around in a pick-up truck. He always stayed in the truck, which had no insignia on it. The parking lot was not enclosed, and it was unsupervised. There were inadequate security personnel to patrol the premises and students routinely would “horse around,” race their cars, squeal their tires and otherwise congregate and create commotion in the student parking lot. Announcements were made over the school’s intercom telling students that the school was aware of the unacceptable activity by students in the parking lot and that this activity should cease. After the accident, Diman hired a security person who remained exclusively in the parking lot all day and rules were promulgated prohibiting students from “hanging around” the parking area and providing for detention for violations of those rules.
“Succinctly stated,” according to the plaintiff, the dangerous condition which caused or contributed to the happening of the incident in question “was a negligent failure to provide adequate supervision, [and] there was inadequate security and inadequate safeguards and regulations in place to protect students walking through the parking lot. ” Asked whether the dangerous condition had been observed by the plaintiff before the accident, Stubbs responded, in part: “My complaint alleges that the school district’s failure to properly control the parking area and to provide adequate supervision, security and safeguards and their failure to promulgate [sic] rules or regulations is not something which is observable.” Stubbs does not claim that the one security guard for the entire school premises negligently failed to carry out his assigned tasks or whatever implied policy was in place by virtue of the fact that there was a security guard for the Diman premises.[1]
DISCUSSION
The Massachusetts Tort Claims Act, G.L.c. 258, exempts the School District from liability for “any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer . . . whether *519 or not the discretion involved is abused.” G.L.c. 258, § 10(b). A two-part test is applied to determine whether a particular claim against a public employer is foreclosed by § 10(b). First, the court must determine if the School District, in fact, had any discretion in operating the student parking lot and, second, even if it did, whether its discretion involved policy making or planning. Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992).
Plaintiff complains that the School District was negligent by failing to supervise the students in the parking lot, failing to have an adequate security plan, assigning inadequate personnel to the parking lot, and failing to have regulations' in place prohibiting inappropriate parking lot conduct by students with sanctions for any such violations. Plaintiff concedes that “the defendant certainly had discretion in the sense that no statute, regulation or established school district practice mandated a particular course of action.” Furthermore, the undisputed facts demonstrate that the particular acts or omissions claimed to be negligent did not involve the carrying out of a previously established policy or plan. The focus of inquiry, therefore, is whether the School District’s exercise of its discretion qualifies as a “discretionary function” for purposes of § 10(b).
“Management of student imbroglios, student discipline, and school decorum fall readily within the discretionary function exception to the Tort Claims Act.” Wightman v. Methuen, 26 Mass.App.Ct. 279, 280 (1988) (negligence claim based upon second grade student having been injured on grounds of elementary school by older student as students awaited the start of the school day foreclosed by § 10(b) where injury-producing conduct was failure to supervise the activities of the students), quoting Cady v. Plymouth-Carver Regional School Dist., 17 Mass.App.Ct. 211, 217 (1983). See also Benic v. Malden, 32 Mass.App.Ct. 186, 189 (1992) (“standards for dealing with disruptive student behavior are not readily ascertainable and ‘must be as variable as the personalities of the students and the settings in which disruptions occur’ ”} (citations omitted). The “determination of what security measures to take to protect” students in the parking lot from the consequences of reckless driving by other students is an integral part of the School District’s policy making or planning process. Wheeler v. Boston Housing Authority, 34 Mass.App.Ct. 36, 40 (1993) (housing authority immune from liability on a claim that it failed to take adequate security measures to protect persons lawfully on its premises). “Given the wide range of choices the [School District] could make to provide security to the premises and the necessary constraints imposed on those choices by budgetary considerations, the particular conduct which the plaintiff claims caused the injury is characterized by a ‘high degree of discretion and judgment involved in weighing [security] alternatives and making choices with respect to public policy and planning.’ ” Id., citing Whitney v. Worcester, 373 Mass. 208, 218 (1977).[2]
The mere fact that the incident in question occurred in a high school parking lot and not, as in Wightman v. Methuen,[3] in the schoolyard of an elementary school, is not a critical distinction. Nothing in Doherty v. Belmont, 396 Mass. 271 (1985), upon which the plaintiff relies, requires a different result. Doherty did, indeed, involve a parking lot, but the analogy ends there. That case concerned a town’s liability for an alleged physical defect on the surface of a municipal parking lot; a protruding metal parking meter stump had caused the plaintiff to trip and sustain injuries. “Thus, the relevant inquiry is not whether the decision to remove the parking meters constituted a discretionary function under § 10(b), but rather whether the maintenance of the parking lot in furtherance of this decision falls within the exception from liability. Any negligence in performing, or failing to perform, the ministerial task of maintenance does not rise to the level of‘public policy or planning’ decisions warranting protection under G.L.C. 258, §10(b).” Id. at 276. Stubbs, by contrast, does not claim that there was any problem with the surface of the parking lot. The complaint uses the phrase “unreasonably dangerous condition,” but the factual allegations in the complaint and the answers to interrogatories make quite clear that the unreasonably dangerous condition at issue here is students congregating in a parking lot where other students were operating their motor vehicles in a negligent manner. This case does not involve the ministerial tasks of maintenance. Doherty does not speak to the issue of supervision of students on school premises.[4]
In sum, the injury-producing behavior alleged by Stubbs falls squarely within § 10(b).
ORDER
For all the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of defendant The Greater Fall River Regional Vocational School District is ALLOWED.

Inexplicably, Plaintiffs Memorandum in Opposition to Defendant’s Motion for Summary Judgment states that “whatever discretion” the School District had “was not based on a policy marking [sic] or planning, but rather it involved the carrying out of the previously established policy . . .” There is no identification of “the” policy to which this assertion is referring and no record reference in support of that assertion. The purported statement of fact in the plaintiffs memorandum contradicts the plaintiff’s answers to interrogatories, e.g., answers to Interrogatories 21, 22, 23, 24 and 26, and, indeed, the immediately preceding sentence in the Opposition Memorandum that “no ... established school district practice mandated a particular course of action.” Furthermore, at oral argument, plaintiffs counsel conceded that he was unaware of any factual support for his written contention.

Like the plaintiff in Wheeler v. Boston Housing Authority, 34 Mass.App.Ct. at 40, a plaintiff suffering an injury stemming from negligent or reckless driving has an alternative remedy, namely a civil action against the driver. Indeed, *520 Stubbs did make a claim against the operator of the automobile, which claim has been settled.

See also Rayberg v. City of Waltham, 5 Mass. L. Rptr. No. 183, 185 (1996) (“[T]he decision of how many monitors to assign to recess, the devising of an adequate supervision plan, and the decision to play kickball, are . . . discretionary functions undertaken by school officials that are exempt under Section 10(b)”).

Other cases relied upon by the plaintiff are distinguishable because the defendant’s discretion had been eliminated either by the legislature or by established standards of practice. E.g., Irwin v. Ware, 392 Mass. 745, 753 (1984) (police officer’s decision whether to remove an intoxicated driver from the roadways is not discretionary because “the policy and planning decision to remove such drivers has already been made by the Legislature”); Kelley v. Rossi, 395 Mass. 659, 665 n.6 (1985) (physician employed by a city is not engaged in a discretionary fiinction in her treatment of a patient because “the doctor was governed by the standard of accepted medical practice, an ascertainable guide to proper conduct”).