Hinkle, J.
This case is currently before the Court on separate motions for summary judgment of defendants Lillian and Esau Reid and the Commonwealth.
For the reasons stated below, the motions for summary judgment are DENIED.
BACKGROUND
The plaintiff, Robert Cobb (Robert), alleges negligence against Lillian and Esau Reid (Lillian and Esau) and the Commonwealth. Count I asserts negligence against Lillian and Esau Reid as foster parents of Robert. Count II asserts negligence against the Department of Social Services (“the Department”). The plaintiff alleges that the Department was negligent in placing Robert with the Reids without appropriate screening, orientation and training. The plaintiff also alleges that the Commonwealth negligently entrusted the Reids with Robert’s care.
On July 30, 1993, the Department of Social Services was notified of five-month-old Robert and his sister Teneisha’s need for care and protection. The Department assigned caseworker Suzanne Difiore (Difiore) to the Cobb family on August 3, and she conducted her initial investigation until August 11. A cousin of the Cobb children’s mother recommended the Reids as possible foster parents. Difiore spoke with Lillian over the phone and potentially arranged to leave *522 the children with the Reids if the court granted the Department’s petition to take custody of the children.
On August 11, 1993, the Department obtained temporary legal custody of Robert and Teneisha and placed them with the Reids. The Department conducted a “cursory home study" at that time, which consisted of ensuring that the children had suitable sleeping accommodations, that no dangling wires were evident, that the house was clean, and that the apartment was equipped with fire alarms and a refrigerator. Thereafter, Difiore visited the household at least monthly.
On September 1, 1993, Glenrick Peart of the Department conducted a further home study of the Reids. He did not actually visit the Reid residence, but had an office visit with Lillian.[2] Peart recommended that the Reids serve as restricted foster parents of the Cobb children.[3]
On November 19,1993, Lillian used an electric deep oil fryer to cook lunch for the children. When she finished cooking, she unplugged the fryer and left it on the counter to cool. About half an hour later, Lillian poured some of the oil into a container and put it aside. As Lillian retrieved another container for the remainder of the oil, Robert, who was in a child walker, pulled on the fryer’s dangling electrical cord. The fryer fell on Robert’s head, spilling hot oil on his neck, shoulder, back and legs. He suffered second degree burns on 30 percent of his body. Lillian immediately immersed Robert in water and removed his clothing, and a friend who was present called 911.
On December 6, 1993, the Reids were notified that they were conditionally approved as foster parents and were required to attend training. On December 9, Difiore was notified that the home study she had requested had been completed and that the Reids had been approved. The Reids completed training in April of 1994.
DISCUSSION
Summary judgment shall be allowed where there are no material facts in dispute and the moving parly is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once tire moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
I. Negligence by the Reids
The plaintiff alleges that tire Reids were negligent. The Reids respond that they stand in loco parentis, and that there is no parental liability for failure to supervise a child. The Reids argue in the alternative that no evidence supports a claim of negligence against them.
I am unpersuaded by the Reids’ contention that foster caregivers stand in loco parentis. Massachusetts Courts have not conferred such status upon foster caregivers. The Supreme Judicial Court has stated that in order for even a stepparent to stand in loco parentis, there must be an intent to assume all the duties and obligations of a parent towards a child. Commonwealth v. O’Connor, 407 Mass. 663, 668 (1990). The intent to replace a natural parent is not to be lightly inferred, and impermanent living arrangements, such as foster care, demand an even greater indication of intent to assume parental duties than do permanent living arrangements. See id.
Even if the Reids stood in loco parentis, however, they would be liable for negligently causing injury to Robert because the doctrine of parent-child immunity has been abrogated in Massachusetts. Stamboulis v. Stamboulis, 401 Mass. 762, 765 (1988). Although in Stamboulis the Supreme Judicial Court took no view as to whether a child may recover for negligent parental supervision, the Court held that a parent who negligently causes injury to his or her child is not immune from liability. Id. at 763, n. 3. Whether the Reids acted reasonably is a question of fact that must be resolved by a juiy.
Although Esau was not present when the incident occurred, since both Esau and Lillian were foster caregivers for Robert, and the Reids together owned and used the fryer for over three years, I rule that the question of Esau’s negligence cannot be resolved on summary judgment.
II. Negligence by the Commonwealth
The plaintiff claims that the Department of SocialServices was negligent in placing Robert with the Reids. The Commonwealth contends that no cause of action for negligent placement exists, and, alternatively, that the Commonwealth was not negligent in its placement of Robert with the Reids.
A cause of action for negligent placement exists in Massachusetts. Thornton v. Commonwealth, 28 Mass.App.Ct. 511, 514 (1990). Although the Appeals Court in Thornton decided that a cause of action could not be maintained against the Commonwealth for the negligence of one of its private contractors towards a child in the Commonwealth’s custody, the Court stated that the choice of the independent contractor as a placement for the child could have been scruti *523 nized as a possibly negligent act of the Commonwealth if such a claim had been asserted by the plaintiff. Id.
The Commonwealth alternatively argues that summary judgment should be allowed because its actions in the placement of Robert with the Reids were reasonable and thus not negligent as a matter of law. The plaintiff claims that the Commonwealth was negligent in its placement of Robert with the Reids because of inadequate screening, orientation and training. The plaintiff also alleges that the Commonwealth’s home study was inadequate because it failed to discover the danger of using a fryer in proximity to Robert while he was in his child walker. Thus, this issue is one of fact for a jury to decide.
The plaintiff further claims that the Commonwealth is liable for the Reids’ negligence because the Reids are public employees. The Commonwealth contends that the Reids are not employees of the Commonwealth, and thus the Commonwealth cannot be liable for the Reids’ alleged negligence.
The definition of a “public employee” is contained in G.L.c. 258. When the incident in question took place in November, 1993, the statute was ambiguous as to whether foster caregivers were considered to be public employees. The statute was amended in January 1994, to include foster caregivers in the definition of public employees. The Commonwealth argues, citing Marshfield v. Springfield, 337 Mass. 633 (1958), that the applicable rule of statutory construction is that when, as here, a change occurs in a statute, it is to be assumed that the change altered the prior existing law. Thus, the Commonwealth argues, foster caregivers such as the Reids were not public employees before the 1994 amendment, and the Commonwealth is not liable for their negligence.
Before the 1994 amendment, however, the test for determining a public employee was whether he or she was subject to the direction and control of the Commonwealth. Hopper v. Callahan, 408 Mass. 621, 634 (1990); Kelley v. Rossi, 395 Mass. 659, 661 (1985); G.L.c. 258, §1 (1990 ed.). Since the incident in question took place before the 1994 amendment, I rule that this is the standard that should be applied to determine whether the Reids were public employees.
Whether one is a public employee or an independent contractor under the standard is a question of fact. Williams v. Hartman, 413 Mass. 398, 400 (1992); Rowe v. Arlington, 28 Mass.App.Ct. 389, 391 (1990). The record before me contains a disputed issue of material fact as to the Reids’ employment status. The plaintiff argues that the Reids were subject to the direction and control of the Commonwealth because the Commonwealth required and subsidized certain sleeping accommodations, clothing and medical needs. The Commonwealth responds that the Reids provided for the children’s physical, medical, emotional and educational needs.
The Commonwealth also contends that it is immune from any part of the plaintiffs claim that is based on the Department’s inadequate inspection of the Reids’ home under G.L.c. 258 §10(f). Since this provision was part of the 1994 amendment of c. 258, however, I find and rule that the Commonwealth was not protected by this provision at the time of the incident in 1993.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motions for summary judgment are DENIED.

Whether Peart did visit the residence appears to be in dispute, so I have construed this fact in the light most favorable to the plaintiff, consistent with the standard for summary judgment.

Restricted foster parents are approved to care for specific children. Unrestricted foster parents are approved to care for children of a particular age.