Hely, J.
A. Introduction
This case raises the important issue of whether the Commonwealth can be vicariously liable under the Tort Claims Act, G.L.c. 258, for alleged negligence by a foster parent who was caring for a foster child under an independent contractor arrangement with the Commonwealth. The court concludes that the Commonwealth can be vicariously liable in such an independent contractor situation, but vicarious liability is limited to cases where the plaintiff can prove that the particular foster parent was subject to direction and control by the Commonwealth.
On a related issue, the court concludes that foster parents are entitled to individual immunity and legal representation as “public employees” under G.L.c. 258, §2, regardless of the direction and control test.
With respect to the plaintiffs separate allegation of negligence by the Commonwealth in selecting the appropriate foster care placement for the child, the Commonwealth is entitled to discretionary function immunity under G.L.c. 258, § 10(b). On another separate claim, the City of Malden’s summary judgment motion must be allowed because the recreational use statute requires evidence of willful, wanton or reckless conduct. There is no such evidence in this case.
B. Basic Facts
The complaint alleges that Maureen G., a child in foster care, was injured when she rode a bicycle into an abandoned car. The abandoned car was in a public school parking lot in Malden. The accident was on September 3, 1995. This action was brought on behalf of the child by her guardian.
Dottie White was the child’s foster caregiver at the time. The Commonwealth’s Department of Social Services had custody of the child. DSS arranged for specialized foster care for the child through DARE Family Services, Inc. under the “Mentor DSS” program. DARE is a private independent contractor that arranges and provides for foster care for children needing a higher level of care under a contract with the Commonwealth. DARE arranged for Dottie White to serve as the specialized foster caregiver for the child. The child was placed in Ms. White’s home in Malden. Ms. White is an independent contractor of DARE.
The complaint alleges that DSS and DARE both “negligently allowed . . . [the child] to be placed in a home where she was not adequately supervised.” The complaint also alleges that Ms. White “negligently failed to adequately supervise” the child on the day of her bicycle accident. The case is before the court on the defendants’ motions for summary judgment and partial summary judgment.
C.A Foster Parent’s Public Employee Status for Purposes of Individual Immunity and Legal Representation
Both the plaintiff and DARE contend that the foster parent, Ms. White, was a “public employee” under G.L.c. §1. Dare contends that this entitles the foster parent to legal representation by the Commonwealth. The plaintiff takes it one step further. She asserts that the foster parent’s “public employee” status makes the Commonwealth vicariously liable for negligence by the foster parent.
The issue of whether a foster caregiver was a “public employee” of the Commonwealth would normally depend on whether she was subject to the direction and control of the Commonwealth in the performance of her foster care duties. Kelly v. Rossi, 395 Mass. 659, 662-63 (1985); Williams v. Hartman, 413 Mass. 398, 400 (1992). Normally, if a person was an independent contractor she would not be treated as a “public employee” under the Tort Claims Act. Thornton v. Commonwealth, 28 Mass.App.Ct. 511, 514 (1990).
The 1993 amendment to the Tort Claims Act, G.L.c. 258, §1, changed the definition of “public employee” to include approved or licensed foster caregivers. The 1993 amendment (St. 1993, c. 467, approved January 13, 1994) added the following second sentence to the definition of “public employee”:
For purposes of this chapter, the term “public employee” shall include an approved or licensed foster caregiver but solely with respect to claims against such caregiver by a child in the temporary custody and care of such caregiver for injury.
[M.G.L.A. c. 258, §1, Historical and Statutory Notes, 1993 Legislation and 1998 Legislation.]
There is no dispute that Dottie White, the foster parent in this case, was an approved or licensed foster caregiver. The injured child’s claim is a claim for injury negligently caused by Ms. White. The 1993 amendment to the "public employee” definition therefore makes Ms. White a “public employee” for purposes of the Tort Claims Act. There is nothing ambiguous about the language of the 1993 amendment that added “approved or licensed foster caregiverfs]’’ as to the definition of “public employee.”
The statute’s “public employee” definition does not limit “public employee” status to foster caregivers who are employed directly by the Commonwealth or sub *377 ject to the Commonwealth’s direction and control. Instead, the 1993 amendment gives approved or licensed foster care givers “public employee” status without any reference to independent, contractor arrangements and without any reference to the direction and control test. Cases decided before the 1993 amendment such as Thornton v. Commonwealth, supra, have been superseded by this amendment on the issue of whether a foster caregiver is a “public employee.”[1]
If a person is a “public employee” under the Tort Claims Act and was acting within the scope of her employment, she is entitled under G.L.c. 258, §2, to both individual immunity from negligence claims and legal representation by the Commonwealth. A foster caregiver’s per se public employee status under the 1993 amendment is important to foster caregivers because it extends to them this Section 2 immunity and legal representation. Finding enough willing, qualified foster parents for abused and neglected children has been a chronic public policy problem in the Commonwealth for many years. It is clear to the court that the intent of this amendment was to extend to foster caregivers the benefit of the same individual immunity from tort suits that protects regular state employees, regardless of whether the foster caregiver qualifies as an employee under the common law direction and control test. The 1993 foster caregiver amendment would be pointless if foster parents still had to satisfy the pre-1993 direction and control test to obtain public employee immunity and legal representation. The court must avoid any interpretation that would make the language of this amendment meaningless. Commonwealth v. Maher, 408 Mass. 34, 37 (1990).
Dottie White is entitled to individual immunity in this case as a matter of law. Although she has not answered and has been defaulted, allowing the default to stand against her in these circumstances would directly contravene the provisions of G.L.c. 258, §§1 and 2, which make her immune from negligence claims as a “public employee” acting within the scope of her employment. The default against Dottie White is therefore removed, and the action against her is dismissed. Mass.R.Civ.P. 55(c).
D. Vicarious Liability for Negligence by a Foster Caregiver
As noted earlier, the plaintiffs memorandum argues that the Commonwealth is vicariously liable for any negligence by the foster parent.[2] In addressing this issue, it must be recalled that the Commonwealth is generally immune from negligence actions “except as [G.L.]c. 258 has abrogated that immunity.” Thornton v. Commonwealth, 28 Mass.App.Ct. 511, 513 (1990). Chapter 258 has limited the general immunity of the Commonwealth and other “public employers” under a carefully defined, comprehensive statutory framework. It is this statutory framework that must control the court’s determination of whether the Commonwealth will be vicariously liable for any negligence of the foster caregiver in this case.
Under G.L.c. 258, §2, “(p)ublic employers” shall be liable for up to $100,000 in damages for personal injury “caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances ... As the Commonwealth has correctly pointed out, the foster caregiver’s status as a ’’public employee" under the Section 1 definition does not automatically make the Commonwealth vicariously liable under Section 2. Under the first sentence of Section 2, the Commonwealth is only vicariously liable for the conduct of a “public employee” if the Commonwealth is a “public employer.” G.L.c. 258, §2 (“Public employers shall be liable for . . . personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . .”).
G.L.c. 258, §1, includes a definition of “public employer” that the court must apply in determining whether the Commonwealth is vicariously liable under Section 2. Under the Section 1 definition, “public employer” means “the commonwealth and any county, city, town . . . [certain other boards and districts], and any department. . . thereof. . . which exercises direction and control over the public employee, but not a private contractor with any such public employer ...” G.L.c. 258, §2 (emphasis added).
The court cannot ignore the direction and control element in the Section 1 “public employer” definition, even though that element is not included in the Section 1 “public employee” definition. The court must consider all the sections of Chapter 258 together “so as to constitute a harmonious whole consistent with the legislative purpose." Commonwealth v. Steadward, 43 Mass.App.Ct. 271, 275 (1997). In Kelly v. Rossi, supra, 395 Mass. at 661, the court treated the direction and control element as an essential part of the “public employer” definition and thus an essential part of the vicarious liability test.[3] It follows that although a foster caregiver is a “public employee” under Section 1 for purposes of employee immunity and legal representation, the Commonwealth will not be vicariously liable as a “public employer" under Sections 1 and 2 unless the Commonwealth exercised direction and control over the foster caregiver.
There is a genuine and material fact issue in this case on whether the foster caregiver, Ms. White, was subject to the direction and control of the Commonwealth. Ms. White and DARE were unquestionably independent contractors with respect to their financial compensation and the nature of their contracts for services. There is no doubt that Ms. White provided *378 the foster care for the child in her own home. These factors do not necessarily mean, however, that Ms. White could not be subject to direction and control by the Commonwealth in the manner in which she performed her foster care services. See Kelly v. Rossi, supra, 395 Mass. at 664-65 (resident physician employed by a city hospital was on a rotation in a private hospital emergency room; evidence raised a fact question on whether the physician was a servant of the private hospital); Williams v. Hartman, 413 Mass. 398, 400-01 (1992).
The Commonwealth’s evidence strongly supports its argument that DSS did not exercise day-to-day control over the manner and details of how Ms. White supervised the foster child. Nevertheless, DARE’s answers to the Commonwealth’s interrogatories, 1,2 and 5-8, are enough to raise a genuine and material fact issue on whether Ms. White was subject to direction and control from DSS employees. According to these answers, DSS social workers monitor the children in DARE homes and continue to participate in conferences related to the child’s care after the placement. DSS establishes and enforces the policies applicable to DARE and its mentor parents. DSS social workers visit mentor homes on at least a monthly basis to evaluate whether the child’s needs are being met and whether the care should be altered. DSS provided training for Ms. White as a foster parent. The court cannot grant summary judgment on the direction and control issue in the face of these interrogatory answers.
E. Negligent Placement and Discretionary Function Immunity
Apart from the vicarious liability issue, the complaint makes an explicit negligent placement claim against the Commonwealth, i. e. the Commonwealth “negligently allowed . . . [the child] to be placed in a home where she was not adequately supervised.” The Commonwealth contends that this claim must be dismissed because it is barred by the discretionary function immunity in G.L.c. 258, § 10(b). The Commonwealth is correct on this immunity issue.
Under the Section 10(b) immunity, the Commonwealth is immune from:
any claim based upon the exercise or performance . . . [of] a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused . . .
The court has adopted a two-prong inquiry to determine whether a public employer is entitled to this discretionary function immunity. “The first step ... is to determine whether the governmental actor had any discretion at all as to what course of conduct to follow.” Sena v. Commonwealth, 417 Mass. 250, 255-56 (1994). This step is easily satisfied in the present case. The Department of Social Services necessarily must have discretion in deciding which available foster care placement best suits the individual needs of each child.
“The second and far more difficult step is to determine whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability.” Sena, supra, at 256. In expanding on this second step, the court has stated, “Discretionary actions and decisions that warrant immunity must be based on considerations of public policy.” Id. In Sena, the court concluded that the conduct of a police investigation by two police officers and their decisions to seek charges and arrest warrants were the kind of discretionary conduct for which Section 10(b) provides immunity. Id. at 256-57. In upholding summary judgment for the officers, the court stated that the “decisions of law enforcement officers regarding whether, when, how, and whom to investigate, and whether and when to seek warrants for arrest are based on considerations of, and necessarily affect, public policy.” Id. at 256.
Decisions by the Department of Social Services on the appropriate foster care placement for an abused or neglected child are comparable to the discretionary investigation and arrest decisions of law enforcement officers. Such decisions inherently involve difficult choices about finding the most suitable available placement for the individual needs of a particular child. Ideal foster parents are hard to find. Compromise choices must often be made, balancing the child’s needs and the available placements. These difficult judgment decisions must be based on considerations of public policy, and they necessarily affect public policy. They are precisely the type of discretionary decisions that the Legislature intended to protect from liability by the discretionary function immunity in Section 10(b). Bencic v. City of Malden, 32 Mass.App.Ct. 186, 187-88 (1992).[4]
Apart from the discretionaiy function immunity, the Commonwealth is entitled to summary judgment on the negligent placement claim for the independent reason that the plaintiff has presented no evidence that the Commonwealth was in any way negligent in placing this child with Ms. White as her foster caregiver. The Commonwealth’s exhibits show that DSS arranged through DARE to place the child in the “therapeutic foster care” program for adolescents who required a high level of intense supervision and structure. This was a one-to-one model with the foster parent providing twenty-four hour supervision in her home and with no other foster children permitted. Ms. White had been an approved foster parent for four years with the DARE program under DARE’s contracts with DSS.
In response to this evidence, the plaintiff has pointed to no evidence of negligence in the DSS decision to place this child through the DARE one-to-one mentor program or in the selection of Ms. White as the DARE foster parent. The summary judgment materials *379 relied on by the Commonwealth are “unmet by coutervailing materials” showing evidence of a negligent placement decision. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The mere occurrence of an accident involving a foster child is not alone proof of negligence in the choice of the foster care placement. The Commonwealth has shown that there is an absence of evidence to support the claim of negligent placement. Kourouvacilis, supra, 410 Mass. at 711, 714, 716.
F. The Recreational Use Statute
In support of its motion for summary judgment, the City of Malden correctly relies on the recreational use statute, G.L.c. 21, §17C. This statute provides that a person with an interest in land who lawfully permits the public to use the land for recreational purposes without a fee “shall not be liable for personal injuries . . . sustained by such members of the public, including without limitation a minor, while on said land in the absence of willful, wanton or reckless conduct by such person.” This statute protects cities and towns as well as private landowners. Anderson v. City of Springfield, 406 Mass. 632, 634 (1990).
The child in this case was riding her bicycle on school grounds on a Sunday when she struck a parked or abandoned car. This is the only evidence of willful, wanton or reckless conduct by the City that the plaintiff cites. It is insufficient as a matter of law. Sandler v. Commonwealth, 419 Mass. 334, 336 (1995).
G. Order
1. In response to DARE’s motion for partial summary judgment, the default against Dottie White is removed, and a judgment will enter dismissing the action against her.
2. On the Commonwealth’s motion for summary judgment, the court enters the following partial summary judgment rulings:
(a) The Commonwealth will be liable under G.L.c. 258, §2, vicarious liability for negligence of Dottie White while acting within the scope of her employment as a foster parent only if the plaintiff proves at trial that Dottie White was negligent, that her negligence caused the child’s injury, and that Ms. White was subject to the direction and control of the Commonwealth in providing foster care to the child.
(b) The Commonwealth is entitled to partial summary judgment dismissing the plaintiffs claim that the Commonwealth negligently allowed Maureen G. to be placed in a home where she was not adequately supervised.
3. A judgment will enter dismissing the action against the City of Malden.

 A 1998 amendment expanded the “public employee” definition in G.L.c. 258, §1, to include foster caregivers who provide foster care to adults. St. 1998, c. 459, §§1 & 2, approved January 14, 1999. This 1998 amendment for caregivers for adults explicitly includes family members of a foster family and other individuals who are “under contract with an adult foster care provider as defined and certified by the division of medical assistance." M.G.L.A. c. 258, §1, Historical and Statutory Notes, 1993 Legislation and 1998 Legislation. Contrary to the Commonwealth’s argument, the lack of such explicit language for foster caregivers for children in the 1993 amendment does not suggest that foster caregivers for children are not public employees if they are independent contractors.

 The complaint does not explicitly allege that the Commonwealth is vicariously liable for negligence by Ms. White. The complaint’s only allegation of negligence by the Commonwealth is that the Commonwealth negligently allowed the child to be placed in a home where she was not adequately supervised. Nevertheless, the plaintiff argues for vicarious liability in her memorandum in response to DARE’s motion for summary judgment. The Commonwealth’s memorandum asks the court to rule that under the Tort Claims Act, G.L.c. 258, the Commonwealth is not vicariously liable for alleged negligence by Ms. White. The court will accept the parties’ invitation to rule on the issue.

 “Although the Tort Claims Act’s definition of ‘public employee’ in §1 provides no detailed guidance in deciding whether a person is a ‘public employee,’ the definition of ‘public employer’ in § 1 does, as the parties appropriately note. That definition states that a city or any agency of a city is a public employer if it ‘exercises direction and control over the public employee.’ "Kelly v. Rossi, supra, 395 Mass. at 661.

 The plaintiffs memorandum cites Thornton v. Commonwealth, 28 Mass.App.Ct. 511 (1990), as support for the argument that the Commonwealth can be liable for negligent placement. The Thornton opinion did observe in dicta that a negligent placement by the Department of Youth Services “could theoretically have been scrutinized” if the plaintiff had made such aclaim. 28 Mass.App.Ct. at 514 (emphasis added). But the Thornton plaintiff had made no such claim. Moreover, the Thornton opinion did not consider any discretionary function immunity issue.