RITA CADY *vs.* PLYMOUTH-CARVER REGIONAL SCHOOL
DISTRICT & others.

Plymouth. November 14, 1983. — December 9, 1983.

Present: DREBEN, KASS, & WARNER, JJ.

*Governmental Immunity. Actionable Tort. Public Officer. School
and School Committee,* Liability for tort. *Negligence,* Public officer.

In an action against a school district, the members of the district's school
committee, the school district superintendent, and the assistant
superintendent, by a student claiming that school authorities had
acted improperly in allowing two students who had attacked the
plaintiff to return to school without taking special precautions to pro-
tect the plaintiff from further harm, the defendants were entitled to
summary judgment in their favor by virtue of the discretionary func-
tion exception in the Tort Claims Act, G. L. c. 258, § 10 (*b*). [213-217]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 16, 1981.

Motions for summary judgment were heard by *Ford,* J.,
and judgment was ordered by *Hurd,* J.

*Robert A. Bartlett* for the plaintiff.

*Mark E. Cohen* for the defendants.

KASS, J. So much of the complaint as is in issue on appeal
charges the school district, the members of its school com-
mittee, the school district superintendent, and the assistant
superintendent (the "public defendants") with failure to
protect and assist the plaintiff "in exercising her right to at-
tend regular sessions" of high school after she had been
worsted in a fracas with two other students, Ethel Robi-
deaux and Patricia Ricardo. As the events which underlie
the complaint occurred in January, 1981, liability, if any,
rests on the Massachusetts Tort Claims Act, G. L. c. 258, in-
serted by St. 1978, c. 512, § 15. By § 16 of that act, it ap-
plies to all causes of action arising on or after August 6, 1977.

The public defendants moved for summary judgment and their motions were allowed. Upon a determination that there was no just reason for delay (Mass.R.Civ.P. 54[b], 365 Mass. 821 [1974]), summary judgment was entered for the prevailing parties, from which the plaintiff appeals.[1] This left in the case the other two girls involved in the altercation, the dean of students, an unnamed physical education teacher, and an unnamed school nurse, all of whom were charged in other counts of the complaint with assault and battery upon the plaintiff.

Robideaux and Ricardo, the other two girls, were suspended and not allowed to return to school until the school committee had inquired into the incident and had given them permission to do so. At argument, her counsel was explicit that Cady's grievance had to do with the decision of the school authorities to allow Robideaux and Ricardo to come back to school without taking special precautions to protect Cady's person and psyche from further harm. She feared further encounters with Robideaux and Ricardo on the basis of remarks by other students that Robideaux and Ricardo were still "after [her]." Her fears led Cady to cut classes on January 29, 1981, and to seek the protection of her boyfriend. Their refuge was in a corridor or stairwell. This the school librarian duly reported to the dean of students, and the latter marched Cady "by the arm" into a school office. In that office there transpired an agitated scene which ultimately involved the dean, the school nurse, and a gym teacher. The upshot of it was that Cady refused to go back to school and received home tutoring for the rest of the school year.

In allowing the public defendants' motion for summary judgment, the judge did not state his reasons. We may surmise that he based his decision on the discretionary function exception which appears in § 10(b) of the Tort Claims Act, since that is the basis on which both parties have briefed

---

[1] We are satisfied upon the record that certification under rule 54(b) was providently made.

and argued the case on appeal. In the absence of a statement of reasons by the judge, we may consider any ground supporting the allowance of the public defendants' motion. *Gallant* v. *Worcester*, 383 Mass. 707, 709 (1981). Subparagraph (*b*) of § 10 of c. 258 provides that the Tort Claims Act shall not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

To date, Massachusetts courts have not had occasion to construe the statutory "discretionary function" exception, although the concept of such an exception was extensively discussed in *Whitney* v. *Worcester*, 373 Mass. 208, 216-220 (1977), an opinion which played a major role as an incentive to the Legislature to enact the Tort Claims Act. See also Cervone and Hardy: The Massachusetts Governmental Tort Liability Act and Its Discretionary Function Immunity: An Analysis and a Modest Proposal, 14 Suffolk U. L. Rev. 1251 (1980), which comments upon the elusive quality of the exception when subjected to analysis. The language of G. L. c. 258, § 10(*b*), tracks very closely the cognate provision in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1976), as to which considerable decisional gloss has developed since its enactment in 1946. In the leading case of *Dalehite* v. *United States*, 346 U.S. 15 (1953), which had to do with an explosion of fertilizer, the Court said that the discretion protected was that "of the executive or the administrator to act according to one's judgment of the best course." *Id.* at 34. Discretionary function certainly includes what Mr. Justice Jackson, in dissent, described as "'Cabinet level' or . . . any other high-altitude thinking" (*id.* at 57) and, Mr. Justice Jackson notwithstanding, later cases have established that the majority opinion in *Dalehite* did not reduce the reach of the Federal Tort Claims Act to "the misconduct of file clerks and truck drivers." *Id.* at 58 n.12.

So, for example, the acceptance of a design of a pilot ejection seat which accidentally catapulted a test pilot into the air while the airplane was on the ground, was held not to involve a discretionary function in *Moyer* v. *Martin Marietta Corp.*, 481 F.2d 585, 598 (5th Cir. 1973). In response to a claim that a dose of polio vaccine had rendered the plaintiff a permanent quadriplegic, the Division of Biologic Standards of the United States Public Health Service could not set up the discretionary function defense because the acts complained of involved no policy or planning decision or judgment, but a failure to act carefully in accordance with delegated authority. *Griffin* v. *United States*, 500 F.2d 1059, 1066 (3d Cir. 1974). Closer, slightly, to the case at bar, is *Hendry* v. *United States*, 418 F.2d 774 (2d Cir. 1969), in which the court decided that the discretionary function exception did not bar an action asserting the negligence of a government psychiatrist and psychologist who had determined that the plaintiff was a paranoid schizophrenic who ought not to have his master's license (for a merchant vessel) reinstated. A factor alluded to by the court in *Hendry* was whether the government servants complained of were operating at a high or low level. *Id.* at 783. That criterion assisted the court in concluding in *Beins* v. *United States*, 695 F.2d 591, 600 (D.C. Cir. 1982), that the Federal Air Surgeon was exercising a discretionary function when he made a judgment not to issue an airman's medical certificate, third class, to a pilot because of potential neurological and vision disorders. In *Hendry*, the government employees were to match facts against a recognized standard, while in *Beins* the task which confronted the Air Surgeon was to determine whether the pilot's disabilities made him unable to perform his duties. That function "left the Air Surgeon a range of policy judgment, albeit a narrow one." *Beins* v. *United States*, 695 F.2d at 604. As the *Hendry* and *Beins* opinions demonstrate, the distinction between a discretionary and nondiscretionary function may be a narrow one as well.

Certain broad principles — of by no means universal applicability — emerge. The policy behind the exception is to avoid allowing tort actions to be used as a monkey wrench in the machinery of government decision making. *Beins* v. *United States*, 695 F.2d at 600. If the public employee is required to decide and act without fixed or readily ascertainable standards to fall back upon, that act is a discretionary function. *Barton* v. *United States*, 609 F.2d 977, 979 (10th Cir. 1979). That the discretion conferred may have been abused is of no matter. It is the nature of the governmental act, not the care with which it is performed, that determines whether the exception applies. G. L. c. 258, § 10(*b*). *Dalehite* v. *United States*, 346 U.S. at 35. Conversely, if there is a readily ascertainable standard by which the action of the government servant may be measured, whether that standard is written or the product of experience, it is not within the discretionary function exception. *Barton* v. *United States*, *supra*, at 979. It requires no manual, for example, to instruct an installer of street lights in Boston that the wind may blow mightily and that lightposts had better be anchored accordingly.

*Whitney* v. *Worcester*, 373 Mass. at 219, lists other inquiries which are relevant on a case by case basis:

> "Was the injury producing conduct an integral part of governmental policymaking or planning? Might the imposition of tort liability jeopardize the quality and efficiency of the governmental process? Could a judge or jury review the conduct in question without usurping the power and responsibility of the legislative or executive branches? Is there an alternate remedy available to the injured individual other than an action for damages?"

Indeed, the *Whitney* case involved action by school personnel, notably, the complaint alleged, allowing school premises to remain in a defective condition and failing to

secure medical attention for an injured child. This, the court observed, was conduct of a kind "reviewed every day through the mechanism of an action in tort." *Id.* at 223. It was not a candidate for the discretionary function exception, had it existed at the time. As to a third allegation, much closer to the case at bar, that the plaintiff, a child with impaired vision, should not have been ordered to attend the school in which she was hurt, that conduct was held to be within the policy making and planning functions of school administration.

Whatever difficulties have cropped up (*Hendry* v. *United States, supra,* contains a particularly compendious review of close cases) and may in the future crop up in application of the discretionary function test, they do not present themselves in the instant case. Sizing up the gravity of a school yard feud, deciding how best to defuse it, and maintaining school discipline involve judgment, experience, and the intuition which is the sum of experience. Indeed, the very basis for judicial abstention from interference with the rules, decisions, and acts by which school authorities maintain decorum is that those are matters within their broad discretion. *Leonard* v. *School Comm. of Attleboro,* 349 Mass. 704, 705-711 (1965). See also *Hodgkins* v. *Rockport,* 105 Mass. 475, 476 (1870); *Antell* v. *Stokes,* 287 Mass. 103, 107 (1934).[2]

Standards for dealing with bullying, or other manifestations of disruptive student behavior, must be as variable as the personalities of the students and the settings in which disruption occurs. Certainly, there are no readily ascertainable standards. Here, at most, the plaintiff charges that school authorities used poor judgment in not taking steps to assure that she would be free from harassment at the hands of her old tormentors. We can imagine circumstances in

---

[2] As we have observed, under G. L. c. 258 even an abuse of that discretion does not render school authorities liable in tort, although, as the cases cited attest, an action for injunctive relief (e.g., reinstatement of a suspended student) may lie if discretion is exercised in bad faith, arbitrarily, or capriciously.

which ignoring obviously dangerous proclivities of a student might be negligent because the standards are clear. Permitting a student who has attacked another with a knife ostentatiously to continue to carry one is an example. That, however, is far from the case here.

Management of student imbroglios, student discipline, and school decorum fall readily within the discretionary function exception to the Tort Claims Act. The motion for summary judgment in favor of the public defendants was rightly allowed.

*Judgment affirmed.*