HARRY STOLLER AND COMPANY, INC. *vs*. CITY OF
LOWELL.

Essex. November 5, 1991. - March 9, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Negligence*,
Municipality, Fire. *Fire Fighter*, Municipality's liability. *Municipal
Corporations*, Liability for tort.

Discussion of the discretionary function exception to governmental tort lia-
bility. [141-144]
Firefighters who exercised their discretion not to use buildings' sprinkler
systems in fighting fires in the buildings failed to conform to generally
accepted firefighting practices, and policy and planning considerations
were not involved; therefore the discretionary function exception to gov-
ernmental tort liability did not apply so as to entitle the municipality to
immunity. [145-146]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 2, 1981.

The case was tried before *Robert W. Banks*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Gerald N. Cohen* for the plaintiff.

*Patricia Sullivan Talty*, Assistant City Solicitor, for the
defendant.

WILKINS, J. On April 23, 1978, five brick buildings in
Lowell and their contents were destroyed by fire. The fire
started on the sixth floor of one of the buildings. Three of the
buildings, including the one in which the fire started, had
sprinkler systems. In this action, the owner of the premises
sought recovery against the city of Lowell under G. L. c. 258
(1990 ed.), based on the claimed negligence of the city's
firefighters in combating the fire.

The jury in a 1990 trial returned a verdict of $850,000 for the plaintiff. Because of the statutory limitation on the amount for which a municipality may be liable (see G. L. c. 258, § 2), a judgment for $100,000 was entered against the city. The city, which had moved unsuccessfully for a directed verdict, sought and obtained the entry of a judgment in its favor notwithstanding the verdict. The judge concluded that the city was exempt from liability under the discretionary function exception set forth in § 10 (*b*) of the Massachusetts Tort Claims Act, G. L. c. 258. We reverse the judgment for the city.

We are concerned solely with the question whether the city is entitled to immunity from liability by application of the discretionary function exception to governmental tort liability. The city does not argue that it owed no duty to the plaintiff or that the evidence did not warrant a finding that the city negligently violated that duty. We must, however, discuss the conduct on which liability was based, because it is that conduct that must have involved a discretionary function, within the very special meaning of those words in § 10 (*b*), if the city is to be immune from liability in this case.

The theory of the plaintiff's case was that the city negligently failed to use the building's sprinkler systems to fight the fire. The jury would have been warranted in finding the following facts. The sprinkler systems had been tested two days before the fire, and they worked satisfactorily. Water pressure adequate to allow the sprinkler system to work properly on the sixth floor of the building in which the fire started was not maintained during the fire. During the early stages of the fire, water was coming out of the sixth-floor sprinkler system. A pumper initially attached to the sprinkler system was disconnected shortly thereafter. The fire department hoses and the sprinkler system used the same water source, and use of the hoses reduced the pressure in the sprinkler systems. Accepted practice in fighting a fire high in a building of the type involved here required the use of the sprinkler system in the circumstances. It would be rare if a sprinkler system properly supplied with water pressure did

not put out such a fire, or at least contain it until it could be put out by manual means.

The first step in deciding whether a plaintiff's claim is foreclosed by the discretionary function exception of § 10 (*b*) is to determine whether the governmental actor had any discretion at all as to what course of conduct to follow. The United States Supreme Court has referred to this determination as the first of two parts of the discretionary function test under the Federal Tort Claims Act. See *Berkovitz* v. *United States*, 486 U.S. 531, 536 (1988). All the first step involves is a determination whether the actor had any discretion to do or not to do what the plaintiff claims caused him harm. Quite obviously, if the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case.

The second and far more difficult step is to determine whether the discretion that the actor had is that kind of discretion for which § 10 (*b*) provides immunity from liability. Almost all conduct involves some discretion, if only concerning minor details. If allegedly tortious conduct were to be immunized from causing liability simply because there was some element of discretion in that conduct, the discretionary function exception would go a long way toward restoring the governmental immunity that G. L. c. 258 was designed to eliminate. As we shall show, however, the discretionary function exception, both under our Act and under the Federal Tort Claims Act (28 U.S.C. § 2680 (a) [1988]), is far narrower, providing immunity only for discretionary conduct that involves policy making or planning. Because of the limitation of the exception to conduct that is policy making or planning, the words "discretionary function" are somewhat misleading as a name of the concept.

This court's principal analysis of the reason for a discretionary function exception to governmental liability appears in *Whitney* v. *Worcester*, 373 Mass. 208, 216-220 (1977). Although that discussion preceded the enactment of the

Massachusetts Tort Claims Act in 1978 (G. L. c. 258, St. 1978, c. 512, § 15), the opinion sets forth guiding principles for determining the scope of the discretionary function exception later stated in § 10 (*b*). See *A.L.* v. *Commonwealth*, 402 Mass. 234, 245 (1988), and cases cited. In the *Whitney* opinion, we said that the dividing line should be between those functions that "rest on the exercise of judgment and discretion and represent planning and policymaking [for which there would be governmental immunity] and those functions which involve the implementation and execution of such governmental policy or planning [for which there would be no governmental immunity]." *Id.* at 217. We added that, when the conduct that caused the injury has a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability." *Id.* at 218. But, when that conduct "involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities." *Id.* We granted that the general rule, as stated, was not "a model of precision and predictability" because "the performance of all functions involves the exercise of discretion and judgment to some degree." *Id.* at 219.

In an anticipatory attempt to assist the process of differentiation between functions that are discretionary and those that are not, the court identified certain considerations as relevant. If the injury-producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the case could not be decided without usurping the power and responsibility of either the legislative or executive branch of government, governmental immunity would probably attach. *Id.* The general rule, however, should be one of governmental tort liability. *Id.*

The Federal Tort Claims Act and cases interpreting it underlie the discussion of the discretionary function exception in the *Whitney* opinion, and, since 1978, we have treated de-

cisions under the Federal Act as providing some guidance in deciding the scope of § 10 (*b*)'s exception. See *Patrazza* v. *Commonwealth*, 398 Mass. 464, 468 (1986).[1] The path of the opinions of the United States Supreme Court concerning the discretionary function exception has been neither straight nor clear. See *United States* v. *Varig Airlines*, 467 U.S. 797, 811 (1984) ("the Court's reading of the Act admittedly has not followed a straight line"). Because each case depends on its facts, the design of a comprehensive, all-purpose guide to the limits of the exception is not likely. See *id.* at 813 (it is impossible "to define with precision every contour of the discretionary function exception"). The important lesson from the opinions of the Supreme Court is that governmental immunity does not result automatically just because the governmental actor had discretion. Discretionary actions and decisions that warrant immunity must be based on considerations of public policy. *United States* v. *Gaubert*, 111 S. Ct. 1267, 1273-1274 (1991). *Berkovitz* v. *United States*, 486 U.S. 531, 537 (1988). Even decisions made at the operational level, as opposed to those made at the policy or planning level, would involve conduct immunized by the discretionary function exception if the conduct were the result of policy determinations. *United States* v. *Gaubert*, *supra* at 1275.

This court has declined to apply the discretionary function exception to a variety of governmental acts. A police officer deciding whether to remove from the roadways a motorist, known to be intoxicated, is not making a policy or planning judgment. *Irwin* v. *Ware*, 392 Mass. 745, 753 (1984). A physician employed by a city is not engaged in a discretionary function, within the meaning of § 10 (*b*), in her treatment of a patient in a hospital emergency room. *Kelley* v. *Rossi*, 395

---

[1]Title 28 U.S.C. § 2680 (a), preserves governmental immunity for discretionary functions or duties in language that is duplicated in § 10 (*b*) of the Massachusetts Tort Claims Act. Both G. L. c. 258, § 10 (*b*), and 28 U.S.C. § 2680 (a) state an exception to governmental liability for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of" the governmental employer or government employee.

Mass. 659, 665 & n.6 (1985). The task of maintaining a municipal parking lot "does not rise to the level of 'public policy or planning' decisions warranting protection" under § 10 (*b*). *Doherty* v. *Belmont*, 396 Mass. 271, 276 (1985). Supervisory State police officials were not engaged in a discretionary function when they undertook or failed to undertake to implement existing disciplinary policies as to a State trooper. See *Dobos* v. *Driscoll*, 404 Mass. 634, 652-653 (1989). The monitoring of a probationer's compliance with the terms of his probation, established by a judge, involves no protected discretionary function. *A.L.* v. *Commonwealth*, 402 Mass. 234, 245-246 (1988). The failure to provide sufficient information to enable a person to protect his property against the conduct of a client of the Department of Mental Health does not involve the exercise of choice regarding public policy and planning but rather the carrying out of previously established policies or plans. *Onofrio* v. *Department of Mental Health*, 408 Mass. 605, 611 (1990), *S.C.*, 411 Mass. 657 (1992). On the other hand, the evaluation and processing, by executive department employees, of claims for Social Security disability insurance benefits is a discretionary function under § 10 (*b*). *Pina* v. *Commonwealth*, 400 Mass. 408, 414-415 (1987). Also, the implementation of a decision to construct unburied guardrail ends on unlimited access highways is the result of a policy decision and under § 10 (*b*) cannot be the basis of liability. See *Patrazza* v. *Commonwealth*, 398 Mass. 464, 469-470 & n.3 (1986).[2]

---

[2]In *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211 (1983), the Appeals Court announced a principle that it thought distinguished between functions that are discretionary and those that are not. If the employee has no "fixed or readily ascertainable standards to fall back upon," the employee's conduct is discretionary. *Id.* at 215. If he has such standards, the conduct is not discretionary and thus is actionable. *Id.* The Appeals Court relied on *Barton* v. *United States*, 609 F.2d 977, 979 (10th Cir. 1979), for this rule. The *Barton* opinion cites no authority in support of it. The United States Supreme Court has not adopted the rule. Nor have we. The existence of fixed or readily ascertainable standards could be relevant in deciding whether a governmental actor owed a duty to another that he negligently failed to fulfil, but it tells us nothing about whether particular discretionary conduct has a policy or planning founda-

Cases involving alleged governmental negligence in fighting fires provide us with some help in deciding this case under the discretionary function test that we have established. In *Rayonier Inc.* v. *United States*, 352 U.S. 315 (1957), the Court held that the complaint stated a cause of action for the negligence of the United States Forest Service in fighting a fire. The opinion is instructive only by implication because it did not discuss the discretionary function exception of the Federal Tort Claims Act. In *Defrees* v. *United States*, 738 F. Supp. 380 (D. Or. 1990), the judge concluded that discretionary function immunity applied to bar liability where forest service employees had had to make social and economic policy decisions in assigning firefighting personnel and equipment and in considering the property interests and endangered species to be protected. *Id.* at 385. One court has said, on the other hand, that shutting down a sprinkler system during a fire is not necessarily a discretionary or policymaking decision. *Industrial Risk Insurers* v. *New Orleans Pub. Servs., Inc.*, 735 F. Supp. 200, 204 (E.D. La. 1990) (Louisiana law).

There are aspects of firefighting that can have an obvious planning or policy basis. The number and location of fire stations, the amount of equipment to purchase, the size of the fire department, the number and location of hydrants, and the quantity of the water supply involve policy considerations, especially the allocation of financial resources. In certain situations, firefighting involves determinations of what property to attempt to save because the resources available to combat a conflagration are or seem to be insufficient to save all threatened property. In such cases, policy determinations might be involved, and application of the discretionary function exception would be required.

The case before us is different. The negligent conduct that caused the fire to engulf all the plaintiff's buildings was not

---

tion. The trial judge in the case before us relied on the *Cady* opinion and concluded that the Lowell fire department was required to act without fixed or ascertainable standards to fall back on and hence was performing a discretionary function.

founded on planning or policy considerations. The question whether to put higher water pressure in the sprinkler systems involved no policy choice or planning decision. There was a dispute on the evidence whether it was negligent to fail to fight the fire through the buildings' sprinkler systems. The firefighters may have thought that they had a discretionary choice whether to pour water on the buildings through hoses or to put water inside the buildings through their sprinkler systems. They certainly had discretion in the sense that no statute, regulation, or established municipal practice required the firefighters to use the sprinklers (or, for that matter, to use hoses exclusively). But whatever discretion they had was not based on a policy or planning judgment. The jury decided that, in exercising their discretion not to use the buildings' sprinkler systems, the Lowell firefighters were negligent because they failed to conform to generally accepted firefighting practices. When the firefighters exercised that discretion, policy and planning considerations were not involved. Therefore, the discretionary function exception does not shield the city from liability.

The judgment notwithstanding the verdict entered in favor of Lowell is vacated. Judgment shall be entered in favor of the plaintiff in the amount of $100,000.[3]

*So ordered.*

---

[3] The judge ordered that, if the appeal were successful, interest on $100,000 would start running on May 22, 1990, the date of the jury verdict. We have recently held that a postjudgment interest award is not proper on a judgment under G. L. c. 258. See *Onofrio* v. *Department of Mental Health*, 411 Mass. 657, 658 (1992).