ZAKIYA ALAKE *vs.* CITY OF BOSTON.

No. 94-P-747.

Suffolk. October 10, 1995. - June 27, 1996.

Present: ARMSTRONG, PORADA, & LENK, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Negligence,* Municipality. *Municipal Corporations,* Liability for tort, Governmental immunity.

On a personal injury claim brought against the city of Boston alleging that the city provided too few supervisors for a large group of public school students in a subway station and that as a result the plaintiff was pushed and jostled and injured, summary judgment was correctly granted in favor of the city where the decision about the number of supervisors to accompany the students was a discretionary act of the city excepted from tort liability under the provisions of G. L. c. 258, § 10 (*b*). [611-613]

On a personal injury claim brought against the city of Boston alleging that the chaperons assigned to a large group of public school students negligently failed to supervise the students with the result that the plaintiff was pushed and jostled and injured on an escalator in a subway station, summary judgment was incorrectly entered in favor of the city, where the chaperons' conduct did not implicate the city's exercise of a discretionary function immune from tort liability under the provisions of G. L. c. 258, § 10 (*b*). [613-615]

CIVIL ACTION commenced in the Superior Court Department on May 13, 1993.

The case was heard by *Margot Botsford,* J., on a motion for summary judgment.

*Paul K. Healey* for the plaintiff.

*Krisna M. Basu,* Assistant Corporation Counsel, for the defendant.

LENK, J. The plaintiff alleges that she was injured on an escalator at the Blue Line Aquarium subway station as a

result of pushing and jostling by a large group[1] of improperly supervised Boston English High School students who were apparently on a field trip. Alleging that the city of Boston (city) provided too few supervisors for the students, and that those supervisors were negligent in carrying out their duties, the plaintiff brought suit in Superior Court under the Massachusetts Tort Claims Act (act), G. L. c. 258. Instead of responding to the plaintiff's interrogatories and request for documents, the city moved for summary judgment on the ground that the claim was barred by the discretionary function exception to governmental tort liability set forth in § 10(b) of the act.[2] The motion judge denied the plaintiff's motion to stay the defendant's summary judgment motion, and granted summary judgment to the defendant.[3] For the reasons discussed below, we reverse.

The plaintiff propounded two theories for the city's negligence: (1) the city was negligent by failing to provide enough chaperons for the students' field trip; and (2) the chaperons who were present were negligent in carrying out their responsibility to supervise the students adequately. We conclude that the discretionary function exception to the act immunizes the city from suit under the plaintiff's first theory, but that immunity does not extend to the plaintiff's second theory.

In *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139 (1992), the Supreme Judicial Court set out a two-part test for determining whether a plaintiff's claim for negligent conduct on the part of the Commonwealth or local governments was barred

---

[1] In her brief, the plaintiff asserts that there were fifty students, but her complaint alleges only that there were "a large number" of students.

[2] Section 10(b), inserted by St. 1978, c. 512, § 15, excepts "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused[.]"

[3] We note that, because summary judgment was granted before discovery commenced, the posture of the case before us is more akin to that of a motion to dismiss. See Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). By failing to invoke Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), in response to the city's motion for summary judgment, the plaintiff waived her right to further discovery before a decision was rendered on the summary judgment motion. The parties have, thus, narrowed the issue before us to the sole question of whether, as matter of law, the city is immune from suit under the discretionary function exception to the act, G. L. c. 258, § 10(b).

by c. 258, § 10(*b*). The first step is to "determine whether the governmental actor had any discretion at all as to what course of conduct to follow." *Id.* at 141. If the allegedly tortious action was prescribed by statute or regulation, or established agency practice, then the governmental actor had no discretion to exercise, and § 10(*b*) immunity would not apply. *Ibid.* If, on the other hand, the particular actions were not so prescribed, the complained of actions would involve some amount of discretion. Under part two of the *Stoller* test, the issue then becomes a question whether the discretion exercised rises to the level of policy-making or planning, as that is the only type of discretion immunized by § 10(*b*). *Ibid.*

Under part one of the *Stoller* test, the discretionary function exception to governmental tort liability would not apply under the plaintiff's first theory were she able to show, for example, that the city had a policy requiring a specific student-adult ratio on school field trips, and that the number of adults on the trip at issue fell below this number. Had this been the case, the school would have been in violation of a specific governmental policy, and the discretionary function exception would not pertain. *Ibid.* The plaintiff effectively waived the argument of negligent failure to comply with a prescribed policy or regulations by failing to present materials to the motion judge demonstrating that there was a genuine issue for trial under this theory or, alternatively, by failing to invoke Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), seeking an opportunity to discover whether there was a school or system-wide policy regarding the proper student-adult ratio on field trips. See note 3, *supra.* See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Thus, for purposes of reviewing the allowance of the defendant's summary judgment motion, we must assume either that no such policy existed or that, if such established school policy did exist, the number of adults on the field trip was in compliance with it.

The plaintiff's first allegation (that there were too few chaperons on the field trip) accommodates a second theory of liability, viz., that even if there were an established city policy and the number of adults on the field trip complied with that city policy, the policy was itself inadequate, and, therefore, provided the basis for a claim of negligence. Under part two of the *Stoller* test, however, decisions about allocating limited resources to provide adequate security qualify as policy deci-

sions within the meaning of § 10(*b*), and are exempt from suit under the act. See *Doe* v. *New Bedford Hous. Authy.*, 417 Mass. 273, 286 (1994), citing *Wheeler* v. *Boston Hous. Authy.*, 34 Mass. App. Ct. 36, 40 (1993) (decision about what security measures to undertake in public housing complex a discretionary function); *Alter* v. *Newton*, 35 Mass. App. Ct. 142, 146 (1993) (decision not to erect fence around school playing field a discretionary act immune from suit).[4] The plaintiff cannot prevail in her claim that the school district was negligent in deciding how many chaperons to send on the field trip.

We turn then to the plaintiff's second theory, that the adults present on the trip were negligent in their supervision of the students. While student supervision involves some exercise of discretion (thereby surviving part one of the *Stoller* test), it does not, under part two of the *Stoller* test, rise to the level of a "policy or planning" function immunized by the act.[5] The reach of § 10(*b*) immunity is limited to policy and planning functions because, otherwise, "the discretionary function exception would go a long way toward restoring the governmental immunity that G. L. c. 258 was designed to eliminate." *Stoller, supra* at 141. Moreover, the reach of the act is to be " 'construed liberally for the accomplishment of [its] purpose[ ]' . . . 'to provide an effective remedy for persons injured as a result of the negligence of governmental entities in the Commonwealth.' " *Irwin* v. *Ware*, 392 Mass. 745, 753-

---

[4]For similar holdings in other States, see *Wright* v. *Arcade Sch. Dist.*, 230 Cal. App. 2d 272, 281 (1964) (decision not to provide school crossing guard); *Gary* v. *Meche*, 626 So. 2d 901, 903, 905 (La. Ct. App. 1993) (failure to construct fence around school yard and failure to use crossing guards discretionary); *Mosley* v. *Portland Sch. Dist. No. 1J*, 315 Or. 85, 92-93 (1992) (decision regarding allocation of personnel to security is discretionary).

[5]See also out-of-State cases holding that failure to supervise is not a discretionary function: *Iverson* v. *Muroc Unified Sch. Dist.*, 32 Cal. App. 4th 218, 227-228 (1995) (qualified immunity provision of statute did not abrogate general duty to supervise students); *Doe* v. *Escambia County Sch. Bd.*, 599 So. 2d 226, 227 (Fla. Dist. Ct. App. 1992) (breach of duty to supervise adequately students under its control is "operational"); *Hawkeye Bank* v. *State*, 515 N.W.2d 348, 351 (Iowa 1994) (teacher's playground supervision, wherein the teacher is trusted to use the care needed in the particular circumstance); *Gary* v. *Meche*, 626 So. 2d at 903 (school board has duty to supervise children); *Mosley* v. *Portland Sch. Dist. No. 1J*, 315 Or. at 93 (failure to break up student fight).

754 (1984), quoting from *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 55 (1982) (additional citations omitted).

Decisions that require some discretion, but that do not involve social, political, or economic policy considerations are not immunized by § 10(*b*). *Horta* v. *Sullivan*, 418 Mass. 615, 621 (1994). Likewise, governmental actions that involve merely the implementation and execution of governmental policy or planning are not immunized under the act. *Stoller, supra* at 142, citing *Whitney* v. *Worcester*, 373 Mass. 208, 217 (1977). Rather, when governmental conduct involves "the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities." *Stoller, supra* at 142, quoting from *Whitney, supra* at 218. In *Whitney*, which established some of the guiding principles for determining the scope of the discretionary function exception (*Stoller, supra* at 141-142), the court held that, while the decision to "mainstream" a handicapped child was a policy decision immune from suit, the decision by a school principal and teacher to send an injured handicapped child out to the playground unaccompanied was "clearly ministerial," and therefore was not immunized. *Whitney, supra* at 223. Similarly, in the instant case, the conduct of the chaperons on the field trip and their decisions to intervene (or not) in the students' pushing and shoving on the escalator were ministerial in nature. The chaperons' conduct involved no social, political, or economic policy; their actions were "ad hoc decision[s], based on the situation confronting [them]" (*Horta, supra* at 621) and the implementation of "previously established policies or plans." *Whitney, supra* at 218. As the court noted in *Whitney*:

> "We do not think that the imposition of liability for such conduct has major implications with respect to the provision of public education. While this conduct undoubtedly did involve the exercise of judgment and discretion, the nature of that judgment is not qualitatively different from the judgments of private individuals which are reviewed every day through the mechanism of an action in tort. Personal injury from . . . the negligence of those into whose care they are entrusted is not a risk that schoolchildren should, as [a] matter of public

policy, be required to run in return for the benefit of a public education."

*Whitney, supra* at 223.[6]

We conclude that the alleged failure of the chaperons to supervise carefully the students in their charge, does not implicate the exercise of a discretionary function under c. 258, § 10(*b*).[7] The judgment is reversed and the case remanded to the Superior Court for further proceedings consistent with this opinion.[8]

*So ordered.*

[6]That the complainant in the instant case is a bystander, rather than a student, does not change the analysis with respect to the discretionary function exception.

[7]*Stoller*, decided in March, 1992, clarified the criteria for determining whether governmental conduct is immunized under § 10(*b*). Prior to *Stoller*, this court, in three reported decisions, reviewed negligence claims made against school districts. In each, we found that the school district's actions were discretionary under § 10(*b*), and that the districts were immune from suit. While the result in *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211 (1983), the seminal case in the series, is consistent with the holding in *Stoller*, some of the principles announced therein, and subsequently relied on in *Wightman* v. *Methuen*, 26 Mass. App. Ct. 279 (1988), and *Bencic* v. *Malden*, 32 Mass. App. Ct. 186 (1992), are not.

The facts in *Cady* can readily be understood to fall within the realm of policy and planning immunized by the act. Two girls, suspended from school after a fracas with the plaintiff, were not permitted to return until the school committee gave them permission to do so. The plaintiff, afraid of further entanglements, stayed home for the rest of the school year. The complained of decision to allow the girls back to school without any special security for Cady was a policy decision much like the decision to mainstream the handicapped student in *Whitney*, or the decisions at issue in *Doe* v. *New Bedford Hous. Authy.*, 417 Mass. 273, and *Wheeler* v. *Boston Hous. Authy.*, 34 Mass. App. Ct. 36, on what kind of security system to provide for the public housing project. The result in *Cady* was therefore correct under the *Stoller* test. However, in *Stoller*, the Supreme Judicial Court rejected the discretionary function test articulated in *Cady* and reversed judgment for the defendant city because, among other things, the trial judge had relied on the reasoning in *Cady*. *Stoller, supra* at 144 n.2. *Bencic* and *Wightman*, involving failures to supervise students which did not implicate policy or planning decisions, also relied on *Cady's* reasoning. *Stoller* has since clarified that such alleged supervisory shortcomings are not the type of discretionary conduct immunized by § 10(*b*).

[8]In light of our holding today, the plaintiff should be permitted to renew her discovery efforts.