ELAINE BRUM[1] *vs.* TOWN OF DARTMOUTH & others.[2]

No. 96-P-687.

Bristol. June 11, 1997. - February 25, 1998.

Present: KASS, LAURENCE, & LENK, JJ.

Further appellate review granted, 427 Mass. 1105 (1998).

*Negligence,* School. *School and School Committee,* Liability for tort. *Practice, Civil,* Motion to dismiss. *Massachusetts Tort Claims Act. Governmental Immunity. Civil Rights,* Availability of remedy.

Statement and discussion of the standard applicable to a motion to dismiss for failure to state a claim under Mass.R.Civ.P. 12(b)(6). [321-322]

A Superior Court judge incorrectly dismissed, pursuant to Mass.R.Civ.P. 12 (b)(6), a wrongful death claim in an action brought under the Massachusetts Tort Claims Act, G. L. c. 258, alleging that municipal and school officials negligently failed to institute any security measures to protect high school students and that the principal of that school negligently failed to respond to the foreseeable and explicitly forewarned threat of harm presented by interloping youths who murdered a high school student in his classroom, where the discretionary function exception, G. L. c. 258, § 10(*b*), was not applicable in the face of the mandate set forth in G. L. c. 71, § 37H, requiring schools to adopt safety policies [322-324], and where the alleged conduct of the school officials constituted risk-taking sufficient to overcome the bar of G. L. c. 258, § 10(*j*), inserted by St. 1993, c. 495, § 144 [324-326]. KASS, J., dissenting.

A Superior Court judge correctly ruled that a civil complaint failed to allege threats, intimidation or coercion necessary to state a civil rights claim under G. L. c. 12, §§ 11H and 11I. [326-328]

CIVIL ACTION commenced in the Superior Court Department on November 4, 1994.

---

[1]Individually and as administratrix of the estate of her son, Jason Robinson.

[2]Leonard Gonsalves, David Faria, Kenneth Vincent, Enid Silvia, and Robert Miller, individually and in their capacity as selectmen; John Nunes, Gail Schultz, Gregory Tougas, William Boles, and Shawn McDonald, individually and in their capacity as school committee members; Arthur Middleton, individually and in his capacity as superintendent of Dartmouth schools; Donald King, individually and in his capacity as principal of Dartmouth high school.

The case was heard by *John M. Xifaras*, J., on a motion to dismiss.

*Todd M. Reed* for town of Dartmouth & others.

*Leonard H. Kesten* for John Nunes & others.

*James E. Riley, Jr.*, for the plaintiff, submitted a brief.

LAURENCE, J. Jason Robinson, a minor attending Dartmouth high school, was stabbed to death by an intruder while he sat in his social studies class. His mother, Elaine Brum, commenced this action against the town of Dartmouth and school and other municipal officials seeking damages for the violation of Robinson's Federal and State civil rights, for Robinson's wrongful death, and on account of the town's negligent failure to provide security at the high school.

The defendants filed a motion to dismiss, pursuant to Mass.R.-Civ.P. 12(b), 365 Mass. 754 (1974), or in the alternative for summary judgment, pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). A judge of the Superior Court treated the defendants' motion as one to dismiss and allowed it on the basis of the allegations of the complaint. We reverse that judgment insofar as it dismissed the negligence claims against the town but otherwise affirm the judgment.

1. *Pertinent facts.*[3] The complaint alleges that on April 12, 1993, shortly before the beginning of classes at Dartmouth high school at 8:00 A.M., two groups of youths, including several high school students, were involved in a violent altercation on the school premises. Tensions between the two groups had escalated during the prior week and had erupted in a physical confrontation on the previous evening. School officials detained Shawn Pina and another student for their role in the altercation at school on April 12th. Pina's adversaries, Nigel Thomas, Carter Reed, and Gator Collet, at least one of whom was not enrolled in the high school, had immediately fled from the scene. Robinson, a friend of Pina (whose role in the school melee was unclear), had gone to class after the incident.

Pina warned principal Donald King that Thomas, Reed, and Collet had threatened to return to the high school to retaliate

---

[3]Since the issue before us is the propriety of the allowance of a motion to dismiss on the pleadings, we take the well-pleaded allegations of the complaint, and such favorable inferences as may rationally be drawn therefrom, as the facts against which the legal sufficiency of the complaint is measured. See *New England Insulation Co.* v. *General Dynamics Corp.*, 26 Mass. App. Ct. 28, 29-30 (1988).

against him and his friends, including Robinson. Shortly after 8:00 A.M., King and other school officials witnessed the trio enter the front door of the high school. They were openly brandishing weapons, including two knives, a billy club, a baseball bat and a length of pipe. The school officials did nothing to confront or obstruct the three youths, who proceeded unimpeded to a second-floor classroom. Collet, Reed, and possibly Thomas entered the classroom believing that Pina would be found inside. When they failed to find Pina, they instead attacked and stabbed Robinson, who died in the classroom.

The complaint also alleged that, despite the statutory mandate of G. L. c. 71, § 37H, requiring every school district to adopt and publish policies, including standards and procedures to assure school building security and the safety of students, the defendants had neither adopted nor published any such security and safety policies. They had in fact done nothing to implement any security or safeguards at Dartmouth high school beyond hanging a "No Trespassing" sign near the front door containing a notice that visitors should go to the school office. In particular, the front door was at all relevant times unlocked and unsecured. Only after the murder of Robinson did the defendants acknowledge the need for the creation, implementation and enforcement of security policies, procedures, and safeguards, and take concrete steps to establish security measures at the high school.

2. *Negligence under G. L. c. 258.* The plaintiff's negligence claims, brought pursuant to the wrongful death statute, G. L. c. 229, § 2,[4] and the Massachusetts Tort Claims Act (Act), G. L. c. 258, were based on two theories: (1) the responsible municipal and school officials had negligently failed to institute any security measures to protect the high school students; and (2) the principal had negligently failed to respond to the foreseeable (and explicitly forewarned) threat of harm presented by the youths who murdered Robinson. The judge concluded that on the facts alleged the town was immune from liability under the Act. He ruled that the adoption of security measures was a discretionary function within § 10(*b*) (see note 7, *infra*), and

---

[4]The plaintiff's wrongful death claim pursuant to G. L. c. 229, § 2, is grounded and depends upon the town's asserted liability under G. L. c. 258, § 2. See *Kromhout* v. *Commonwealth*, 398 Mass. 687, 689 (1986). We observe that the individual defendants cannot be held liable if they were acting within the scope of their office or employment, G. L. c. 258, § 2; whether they were or not here is a factual issue not properly raised by the motion to dismiss.

that the school officials' failure to act fell within the "public duty" rule of § 10(*j*) (see note 9, *infra*, and related text).[5] We conclude, to the contrary, that the plaintiff's negligence claims are not foreclosed by either statutory provision.

(a) *Standard for rule 12(b)(6) motion.* While the judge referred to the proper standard applicable to motions to dismiss, he did not apply it in the exceedingly liberal manner mandated in our cases. We elaborate the standard because of its overriding relevance:

> "Under Mass.R.Civ.P. 12(b)(6), 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim.' *Nader* v. *Citron*, 372 Mass. 96, 98 (1977) . . . . 'Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true.' *Ibid.* . . . '[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate.' *Nader* v. *Citron*, 372 Mass. at 104."

*New England Insulation Co.* v. *General Dynamics Corp.*, 26 Mass. App. Ct. 28, 29-30 (1988).

These generous and indulgent criteria have reduced a plaintiff's obstacle in surmounting a rule 12(b)(6) motion to dismiss for failure to state a claim to a minimal hurdle. *Bell* v.

---

[5]The judge also ruled that the principal's alleged negligent failure "to anticipate, and to establish and enforce adequate security in light of, the 'serious and specific threat of immediate harm to students on April 12, 1993,' " was not a discretionary function under § 10(*b*). We agree with that ruling. The individuals brandishing weapons in this case posed an obvious danger to the threatened students as well as the general population of the high school. The acts that the plaintiff claims the principal did not do here clearly involved conduct pertaining to the "implementation and execution of . . . governmental policy." *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 142 (1992), quoting from *Whitney* v. *Worcester*, 373 Mass. 208, 217 (1977). See *Alter* v. *Newton*, 35 Mass. App. Ct. 142, 147 (1993) (city's failure to warn students of hazards of erratic lacrosse balls not a discretionary function); *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 614-615 (1996) (failure of chaperons to supervise students on field trip did not implicate § 10[*b*]). Cf. *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211, 216-217 (1983) (ignoring obviously dangerous activities of a student would not be a matter involving discretion of school authorities).

*Mazza*, 394 Mass. 176, 183, 184 (1985). *Connerty* v. *Metropolitan Dist. Commn.*, 398 Mass. 140, 143 (1986). *Disend* v. *Meadowbrook Sch.*, 33 Mass. App. Ct. 674, 676 (1992). All that a plaintiff need do to resist such a motion is present a complaint that does no more than "sketch[] the bare silhouette of a cause of action." *Coolidge Bank & Trust Co.* v. *First Ipswich Co.*, 9 Mass. App. Ct. 369, 371 (1980). The plaintiff is to be given the benefit of any doubt, *Kipp* v. *Kuecker*, 7 Mass. App. Ct. 206, 210 (1979), and must prevail over the motion unless it appears *with certainty* that he is entitled to no relief under any combination of facts that could be proved in support of his claims. *Flattery* v. *Gregory*, 397 Mass. 143, 145-146 (1986). *Spinner* v. *Nutt*, 417 Mass. 549, 550 (1994). *Bahceli* v. *Bahceli*, 10 Mass. App. Ct. 446, 451 (1980).

In passing on a rule 12(b)(6) motion, the court is not to consider the unlikelihood of the plaintiff's ability to produce evidence to support otherwise legally sufficient complaint allegations, *Goldman* v. *Belden*, 754 F.2d 1059, 1066, 1067 (2d Cir. 1985); *Mmoe* v. *Commonwealth*, 393 Mass. 617, 619-620 (1985), however improbable appear the facts alleged, *Jenkins* v. *Jenkins*, 15 Mass. App. Ct. 934 (1983); *Reardon* v. *Commissioner of Correction*, 20 Mass. App. Ct. 946, 947 (1985), and "notwithstanding expressions of denial and incredulousness as to ultimate proof by the defendants." *Eyal* v. *The Helen Bdcst. Corp.*, 411 Mass. 426, 431 (1991). That the plaintiff alleges claims arising out of arguably discretionary actions by governmental defendants, or claims that otherwise appear to have little chance of success in light of the defenses under the Act, does not preclude successful resistance to a motion to dismiss. See *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 142-143 (1992); *Jean W.* v. *Commonwealth*, 414 Mass. 496, 513 (1993).

The plaintiff's claims here founded on the Act satisfy these extremely lenient standards and should have been ruled sufficient to resist the preliminary (and premature, see *Kirkland Constr. Co.* v. *James*, 39 Mass. App. Ct. 559, 564-565 [(1995)] [Brown, J. concurring[6]]) challenge of undeveloped defenses based upon sections 10(*b*) and 10(*j*) of the Act.

---

[6]"[R]ule 12(b)(6) is not even a blunt instrument and should seldom be the weapon of first choice. Rule 56 is the deadly one." *Kirkland Constr. Co.* v. *James*, 39 Mass. App. Ct. at 564-565. By our disposition we are also reversing the judge's denial of the plaintiff's motion, pursuant to Mass.R.Civ.P.

(b) *Section 10(b)*. The Act provides that a public employer can be liable for damages "caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ." G. L. c. 258, § 2. Public employers are not, however, liable for claims that result from the performance of discretionary functions. G. L. c. 258, § 10(*b*).[7] The first step in determining whether a claim is foreclosed by the discretionary function exception in § 10(*b*) is to decide "whether the [government] actor had any discretion to do or not to do what the plaintiff claims caused him harm." *Harry Stoller & Co.* v. *Lowell*, 412 Mass. at 141. If the actor "had no discretion because a course of conduct was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case." *Ibid.* The second step is to determine whether the discretionary conduct involves policy making or planning, the only type of discretion immunized by § 10(*b*). *Ibid.* We think the judge erred in reading the complaint as attacking "the nature and extent of school building and security" and the school committee's "failure to adopt appropriate or adequate policies" and "thus too readily conclud[ed] that the [defendant] satisfied the first part of the *Stoller* test." *Coughlin* v. *Department of Correction*, 43 Mass. App. Ct. 809, 815 (1997).

The plaintiff contends that her claims, founded on the lack of security measures at the high school, are not barred by the discretionary function exception, because those responsible for the high school were required by statute to adopt safety policies

56(f), 365 Mass. 825 (1974), seeking discovery to support her claims against a summary judgment motion. "Especially in a wrongful death case [under the Act] where many relevant facts may not be known to the plaintiff (as administrator of an estate), not allowing the opportunity for discovery seems especially inequitable. The plaintiff is entitled to engage in discovery to develop further his theories of negligence." *Coughlin* v. *Department of Correction*, 43 Mass. App. Ct. 809, 817 (1997). Contrast *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 611 n.3 (1996) (by failing to invoke rule 56[f], plaintiff waived her right to further discovery and validated decision rendered as a summary judgment).

[7]Section 10(*b*) provides in pertinent part that the Act shall not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

for the school. General Laws c. 71, § 37H, provides, in relevant part: "The superintendent of every school district *shall* publish the district's policies pertaining to the conduct of teachers and students. . . . Each school district's policies pertaining to the conduct of students *shall* include the following: . . . standards and procedures to assure school building security and safety of students and school personnel." (Emphasis added).

The language regarding the adoption of "standards and procedures to assure school building security and safety of students and school personnel" by a school district is mandatory. The plaintiff's fundamental allegation is that the defendants had neither adopted nor implemented *any* security policy, procedures or safeguards for the high school. Taking this allegation as true and with all inferences in favor of the plaintiff, under the first part of the test enunciated in *Harry Stoller & Co.* v. *Lowell*, 412 Mass. at 141, the plaintiff's claim is not foreclosed by the discretionary function exception. See *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 612 (1996) (violation of specific governmental policy negates the § 10[*b*] exception). Cf. *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211, 216-217 (1983) ("We can imagine circumstances in which ignoring obviously dangerous proclivities of a student might be negligent [and not immune under § 10(*b*)] because the standards are clear. Permitting a student who has attacked another with a knife ostentatiously to continue to carry one is an example").[8]

(c) *Section 10(j).* Subsection (*j*) of section 10 of the Act provides immunity from "any claim based on an act or failure

---

[8]We agree with the judge that § 37H, while expressly concerned with "the possession or use of . . . weapons," including guns and knives, on school premises, as well as with building security and student safety, does not address the particular scope or substance of a school district's security policy adopted pursuant to the mandate of § 37H. The determination of what specific security measures become included in that plan in order to protect students from unlawful behavior of other students or third parties is an integral part of a school district's policy making and planning process. See *Alter* v. *Newton*, 35 Mass. App. Ct. at 146 (decision of town not to erect fence around school athletic field was discretionary function); *Alake* v. *Boston*, 40 Mass. App. Ct. at 612-613 (decision about allocating limited resources to provide adequate security during school field trip qualified as policy determination under § 10[*b*]). Cf. *Wheeler* v. *Boston Hous. Authy.*, 34 Mass. App. Ct. 36, 40 (1993); *Doe* v. *New Bedford Hous. Authy.*, 417 Mass. 273, 286 & n.13 (1994) (determination of security measures employed to protect persons in public housing complex from unlawful activity was discretionary function).

to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."[9] Although no case has yet definitively interpreted the meaning of the words "not originally caused by,"[10] we are able to apply them here in accordance with their plain meaning. *Lawrence* v. *Cambridge*, 422 Mass. 406, 410 (1996). That meaning appears particularly clear against the background not only of the unstinting standards of rule 12(b)(6), but also of (a) the policy that the Act is to be construed liberally for the accomplishment of its remedial purpose, to provide an effective remedy for persons injured as a result of the negligence of governmental entities in the Commonwealth, see *Irwin* v. *Ware*, 392 Mass. 745, 769 (1984); *Alake* v. *Boston*, 40 Mass. App. Ct. at 613; (b) judicial recognition that deficient school security can be a causative factor when students at the school are subjected to physical attack by outsiders who invade the school, see *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58-59, 62-63 (1983); (c) the municipal obligation to provide for and enforce the school attendance of all resident children, see G. L. c. 76, § 1; *Board of Educ.* v. *School Comm. of Quincy*, 415 Mass. 240, 244-245 (1993); and (d) the duty of those responsible for public schools to provide children not only with an adequate public education but also with a safe and secure environment in which they can learn. See G. L. c. 71, § 37H; *Doe* v. *Superintendent of Schs. of Worcester*, 421 Mass. 117, 131 (1995); *Alter* v. *Newton*, 35 Mass. App. Ct. 142, 145 (1993).

In light of those guiding principles, we view the complaint as plainly overcoming the immunity of § 10(*j*), by alleging facts establishing a claim based upon the defendant public employees' failure to act to prevent or diminish the harmful consequences of a condition or situation which *was* originally caused by them. Their alleged mismanagement of the high school security system

---

[9]This "statutory public duty rule" took effect on January 14, 1994, and applies "to all claims upon which a final judgment has not entered, or as to which an appeal is pending or the appeal period has not expired, and to all claims upon which suit is filed after the effective date of this act." St. 1993, c. 495, § 144. *Carleton* v. *Framingham*, 418 Mass. 623, 627-628 (1994). The plaintiff's complaint was filed on November 4, 1994. Accordingly, § 10(*j*) applies to this action.

[10]The issue was expressly left unresolved in *Carleton* v. *Framingham*, 418 Mass. 623, 629 n.7 (1994).

by failing to adopt or implement *any* security measures created, i.e., originally caused, a condition or situation of total insecurity against interlopers at the school, the foreseeable harmful consequences of which — namely, the invasion and fatal attack on Robinson by the returning trio of violent students — the principal and other school officials wholly failed to prevent or diminish.

In other words, the defendant public employees here have been alleged not merely to have failed to prevent or mitigate a privately caused harmful situation, but rather to have done something more; namely, to have themselves been involved in creating the initial injury-causing condition of physical insecurity. Moreover, by subsequently failing, upon the violent youths' return and entry into the school, to implement any interventionist security measures to deter the known and imminent threat, the school officials exacerbated the hazardous condition they had created (and continued to maintain), thereby materially contributing to the circumstances that directly led to the tortious injury. Those scenarios constitute risk-creating conduct on the part of public employees that is sufficient to overcome the bar of § 10(j) at the motion to dismiss stage. Cf. *Cyran* v. *Ware*, 413 Mass. 452, 467-468 (1992) (O'Connor, J. concurring); Glannon, Liability for "Public Duties" Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass. L. Rev. 17, 26-27 (1994).[11, 12]

3. *Civil rights claims.* The judge correctly ruled that the

---

[11]The defendants argue, based on *Bonnie W.* v. *Commonwealth*, 419 Mass. 122, 126-127 (1994), that the critical distinction in determining the applicability of § 10(j) is whether a public employee actively caused the harm to the plaintiff as opposed to merely failing to prevent or mitigate the harm. We disagree. In *Bonnie W.*, the plaintiff was sexually assaulted in her mobile home by a paroled rapist who worked at the trailer park. She brought a negligence action against the assailant's parole officer, claiming that he (a) negligently supervised the parolee and (b) negligently recommended the parolee's continued employment at the trailer park after having misrepresented (by nondisclosure) the parolee's criminal history. The court found that § 10(j) barred the claim of negligent supervision but did not bar the plaintiff's alternate theory of liability. That result does not support the defendants' analysis of *Bonnie W.* The applicability of § 10(j) here does not, in any event, hinge on the public employees' passive or active involvement in the ultimate harmful consequences that befell Robinson; rather, under the explicit language of the subsection, the critical inquiry is whether the public employees' action or lack thereof brought about or contributed to harmful consequences made possible by their own earlier neglectful conduct in mismanaging the school's security status in the face of a statutory obligation to act. Compare *Whitney* v.

complaint failed to allege, however liberally construed, the requisite threats, intimidation, or coercion required to give rise to a claim under G. L. c. 12, §§ 11H and 11I. See *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, 564, cert. denied, 516 U.S. 931 (1995). His dismissal of the plaintiff's claims under 42 U.S.C. § 1983 was also proper under applicable Federal precedent, because (a) Robinson was murdered by private persons not acting under color of State law, *DeShaney* v. *Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195-196 (1989); (b) the municipal and school officials had no constitutional obligation to protect Robinson, *id.* at 196-202; see *Estate of Gilmore* v. *Buckley*, 787 F.2d 714, 719 (1st Cir.), cert. denied, 479 U.S. 882 (1986); (c) there is a lack of relevant Federal authority supporting (and uniform decisions rejecting) the plaintiff's argument that the *DeShaney* rationale does not apply to students in school "custody," see *Johnson* v. *Dallas Indep. Sch. Dist.*, 38 F.3d 198, 202 (5th Cir. 1994), cert. denied, 514 U.S. 1017 (1995); *Arroyo* v. *Pla*, 748 F.

---

*Worcester*, 373 Mass. 208, 221 (1977) (municipal liability "should not be influenced by the finite distinctions drawn in the[] cases [involving misfeasance-nonfeasance analysis], distinctions which have no real connection with sound reasoning or policy"); *Mamulski* v. *Easthampton*, 410 Mass. 28, 29-30 (1991) (allegation of violation of G. L. c. 258 by town's failure to replace a missing stop sign sufficient to overcome motion to dismiss); *Jean W.* v. *Commonwealth*, 414 Mass. 496, 507 & n.9, 508 (1993) (Liacos, C.J., concurring); *Armstrong* v. *Lamy*, 938 F. Supp. 1018, 1045 (D. Mass. 1996). It is well recognized that failure to act to protect another when the actor is under a duty to act can constitute actionable negligence. See Restatement (Second) of Torts §§ 284(b), 323(a) (1965). Cf. *Mullins* v. *Pine Manor College*, 389 Mass. at 50-57.

[12]Professor Glannon, who participated in the committee discussions that led to the 1993 amendment to G. L. c. 258, § 10, provides an example of student combat at school, analogous to the instant case, as to which he submits recovery is not barred by subsection 10(*j*):

> "Suppose, for example, that school officials negligently supervise a playground during school hours, and as a result a child is injured by another. The direct source of the harm is the other child, yet it cannot be said that his injury is 'attributable to the employee only in the sense that the employee has failed to prevent or mitigate it.' Here, the negligence of public employees contributed to the circumstances which led to the injury: The child is required to attend the school, and school officials have placed the child in a situation which involves a risk of injury without taking adequate steps to protect him. Subsection (*j*) should not bar recovery, since public employee conduct contributed materially to producing the injury."

79 Mass. L. Rev. at 17, 26-27.

Supp. 56, 59-61 (D.P.R. 1990) (involving a claim by a parent whose son was shot to death by another student during class); and (d) the defendants would be entitled to qualified immunity from § 1983 liability in light of the existing state of the law as it applied to school situations, since it did not clearly establish a student's constitutional right to be free from attack by private parties during the school day. See *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982); *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield*, 401 Mass. 26, 31-32 (1987), cert. denied, 485 U.S. 906 (1988).

4. *Conclusion.* We reverse so much of the judgment as dismissed the plaintiff's claims under G. L. c. 229, § 2, and c. 258, § 2, and affirm the judgment in all other respects. We remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

KASS, J. (dissenting). When the court in *Jean W.* v. *Commonwealth*, 414 Mass. 496, 499 (1993), announced that it would abolish the public duty rule, it coupled its announcement with an invitation to the Legislature "to consider whether it wishes to respond to this anticipated change by passing additional limitations on liability." *Ibid.* The Legislature responded with St. 1993, c. 495, § 57.

That amendment[1] added, among other limitations of governmental tort liability, a new subparagraph (*j*) to G. L. c. 258, § 10, which exempted governmental units from liability for

"any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

By clause 1 to subparagraph (*j*), the liability exclusion was not to apply to

"any claim based upon explicit and specific assurances of

---

[1]By § 144 of St. 1993, c. 495, the amendment was made to apply to all pending claims as to which a judgment had not yet entered, hence its pertinence to the case at bar.

safety or assistance . . . made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances."

To what degree the public ought to compensate persons for damages inflicted by third parties (the murder in this case) or other extraneous causes (as the fire in *Cyran* v. *Ware*, 413 Mass. 452 [1992]) that competent public action might have prevented is a policy question about which there can be intelligent differences of opinion, as the four separate opinions in *Jean W.* v. *Commonwealth* richly illustrate. Within only constitutional limits, it is the task of the Legislature to resolve such public policy questions and, in this instance, it seems to me that the Legislature has done so unmistakably. No school official stabbed Robinson to death. It requires convoluted reasoning to say, as does the majority, that the school authorities originally caused the violent act of Collet, Reed and, possibly, Thomas. The school authorities might have *prevented* the killing but failing to prevent, under the statute, is in the excluded category. The majority's outflanking of the statutory exclusion returns the courts to making the sort of indefensible distinctions that *Jean W.* v. *Commonwealth*, 414 Mass. at 499, lamented and that gave rise to the 1993 amendments in the first place.

There is nothing obscure about the manner in which § 10(*j*) is written. The majority opinion is a regrettable exercise in judicial nullification of a legislative act. If one were to look for assurance that the Legislature intended to exclude just the sort of action brought here, it is instructive to examine a draft amendment first proposed by the Attorney General in the wake of the *Jean W.* opinion. The Attorney General's draft § 10(*j*) read:

"any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation not originally caused by the public employee or any other person acting on behalf of the public employer."

The reader will observe that the Legislature took the trouble to add the phrase "the violent or tortious conduct of a third person," precisely the case we have here. See Glannon, Liability for "Public Duties" Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass. L. Rev. 17, 32 (1994).

There is no claim based upon "explicit and specific assurances of safety or assistance" to the victim. A further category of exclusion from the § 10(*j*) limitation of liability is that which appears in clause (3), "any claim based on negligent maintenance of public property," but this refers to keeping property in good repair, not the installation of security systems and procedures. See Glannon, *supra* at 28.

I would affirm the judgment of dismissal based on G. L. 258, § 10(*j*).